### NASH v. ALASKA AIRLINES, Inc.

United States District Court
S. D. New York.

Dec. 11, 1950.

Arthur Dunn, New York City, for plaintiff, Philip Handelman, New York City, of counsel.

Harper & Matthews, New York City, for defendant, Harold Harper and Vincent P. Uihlein, New York City, of counsel.

IRVING R. KAUFMAN, District Judge.

Plaintiff, a consultant in the business of product development and industrial design, seeks to recover from the defendant reasonable compensation for services rendered to the defendant and also damages for common-law copyright infringement. The facts are as follows:

Defendant is an airline company incorporated in Alaska and engaged in the business of transportation of passengers and freight by air in Alaska and elsewhere. In a revitalization of its advertising program, defendant retained Fred W. Burnside in September, 1945 at $200 per month to handle its publicity and advertising. Part of Burnside's program for sales promotion was to have a single new insignia to be used by the defendant on its planes, stationery and advertising material. To facilitate this purpose Burnside asked the plaintiff to submit ideas and sketches to the defendant purely on a contingent fee basis. The understanding was that if the defendant accepted any ideas or sketches of the plaintiff, an agreement for compensation would be made; if no ideas or designs were acceptable, the plaintiff would not receive any compensation.

Plaintiff met with Burnside and Theodore N. Law, defendant's President, on

October 4, 1945 and submitted designs built around a central motif of a husky dog. None of these designs was acceptable to Law, and it is clear that plaintiff is not entitled to compensation for these designs. At this meeting Law, whether through plaintiff's questioning or otherwise, said that he would like the three leading industries of Alaska, i. e. mining, fishing and lumbering, to be represented in the contemplated design.

Plaintiff then made new designs and submitted them to Raymond W. Marshall, Chairman of the defendant's Board of Directors, on October 24, 1945, at its New York office in Burnside's presence. Many designs were submitted but the one most material to this suit is Plaintiff's Exhibit 5-C (also repeated in Plaintiff's Exhibit 5-B). This design depicted a totem pole embodying symbols of the three industries aforementioned, to wit: a gold nugget, a tree and a fish.

Despite numerous inquiries by Burnside, Marshall gave no decision as to the acceptability of the designs, though he retained them. In March of 1946 the defendant severed its relations with Burnside and retained the advertising firm of Burke Dowling Adams, Inc., to handle its advertising and publicity.

Between August and September, 1946, defendant advertised in one edition of each of four leading newspapers, using a totem pole with grotesque figures clutching symbols of the mining, fishing and lumber industries in its advertisements. A similar totem pole was used on the 1945 annual report to stockholders issued late in 1946, and on a 1946 timetable of the defendant. Upon seeing one of the newspaper advertisements, plaintiff protested to the defendant that it was his concept and design that was being used and sent defendant a bill for $3,000 for services and $11 for disbursements. Defendant refused to pay the bill and denied that it was using plaintiff's designs or concept. Defendant returned plaintiff's designs in October of 1946.

■ Plaintiff seeks to recover in quantum meruit or quasi-contract under his first cause of action for the reasonable value of his services. Obviously there was no express or implied contract between the parties, for there was no completed agreement nor was there any intention on the part of the defendant to perform any contractual obligations. See Restatement of Contracts, Section 5.

■ It is conceded that plaintiff is entitled to recover on a quasi-contractual basis if the defendant used his ideas or designs. The Court believes that the submission of the designs to the defendant and the defendant's retention of the plaintiff's designs until after the use in advertising and other matter of an essentially similar design creates an inference that defendant used plaintiff's design. Defendant offered practically no proof to overcome this.

■ Aside from this inference there is credible evidence in support of the fact that plaintiff's design was copied and modified by the Burke Dowling Adams agency, and that such modification of plaintiff's design was used by the defendant. Defendant returned plaintiff's designs in October, 1946, as mentioned above. With plaintiff's designs was a drawing, Plaintiff's Exhibit 9, which the defendant obviously thought was one of plaintiff's designs. It is almost an exact copy of Plaintiff's Exhibit 5-C. Furthermore there are photostats of sketches in evidence (Exhibits 16-A, B & C) obtained from the Burke Dowling Adams agency which indicate the evolution of the finished drawings used by the defendant from plaintiff's design. From the evidence this Court is driven to the conclusion that plaintiff's drawings were in the hands of the Burke Dowling Adams agency, whether through negligence or otherwise, and that the agency used and copied them. Therefore the defendant used plaintiff's design and he should be compensated for such use.

■ Plaintiff's charge of $200 per 7 hour day for his services plus a bonus of $1,000 for an accepted slogan, symbol or concept is reasonable, especially in light of the fact that plaintiff here was working on a contingent fee basis. Plaintiff worked a total of 72 hours on the totem

pole designs, and his concept was used; therefore his bill of $3,000 plus $11 disbursements on the first cause of action is reasonable and judgment in that sum plus interest from September 4, 1946 is granted in plaintiff's favor on that cause of action.

Plaintiff's second cause of action is drafted to spell out a common-law copyright infringement, the basis being that an artist or designer has a right not to have his work copied.

Defendant contends at the outset that this cause of action is inconsistent with the first cause of action. While it is true that transfer of title to an artistic work pursuant to a contract transfers all rights to the common-law copyright (absent an express reservation to the contrary), the plaintiff's first cause of action in this case is for reasonable compensation for defendant's unjustifiable use of plaintiff's design. It does not seem possible to this Court that one can unjustifiably or mistakenly use another's property, deny existence of a contract or use of the design, and at the same time claim that the common-law copyright has passed. In view of the facts and findings of this Court there is nothing inconsistent between the two causes of action.

There can be no copyright of an idea, but there can be a copyright of the representation of an idea, that is, the form, sequence and manner of expression or illustration. Moore v. Ford Motor Co., D.C. S.D.N.Y.1928, 28 F.2d 529. Plaintiff cannot recover if the defendant obtained the totem pole design from the Burke Dowling Adams agency through the agency's independent inspiration, for the embodiment of symbols of Alaska's industries in a totem pole is an idea, and hence non-copyrightable. However there is evidence in this case and the Court finds that plaintiff's design was in fact copied, of course with variations. The fact that the resulting totem pole differed in some respects from plaintiff's design is immaterial. Ansehl v. Puritan Pharmaceutical Co., 8 Cir.1932, 61 F. 2d 131. Plaintiff is therefore entitled to recover on his second cause of action.

The primary measure of damages for common-law copyright infringement is the value to the defendant of the use of the plaintiff's design or the reasonable value of plaintiff's work. Plaintiff has already recovered the reasonable value of his services under his first cause of action and cannot recover that measure of damages twice.

Plaintiff also seeks to recover exemplary damages and counsel fees on his second cause of action. Exemplary damages depend upon proof of malice. Malice can be inferred from unjustifiable conduct or a wanton and reckless indifference to the rights of others. While plaintiff's design did come into the hands of the Burke Dowling Adams agency, it may have been as a result of one of many causes, i. e. either through mistake, or negligence, or reckless disregard of plaintiff's rights, or because of malicious intent. Plaintiff has failed to sustain his burden of proving malice or reckless disregard of his rights on the part of the defendant or of the Burke Dowling Adams agency. It is consistent with the evidence that the possession by the Burke Dowling Adams agency might have been through error or ordinary negligence. The quantum of credible proof necessary to spell out malice is completely lacking and the failure of either side to call a representative of Burke Dowling Adams agency to testify certainly did not aid in supplying the necessary evidence on this phase of the case. Therefore the Court will not award the plaintiff exemplary damages.

The Court does not feel an award for counsel fees to be justified in this case.

Since plaintiff has already recovered for the reasonable value of his services on his first cause of action, he cannot recover for these services on the second cause of action. Plaintiff has made out a case of common law copyright infringement and therefore judgment is granted in his favor on the second cause of action in the nominal sum of $1.

Submit a decree in accordance with this decision.