DORA GILL, Respondent, v. MONTGOMERY WARD & CO., INC., Appellant.

Third Department, April 2, 1954.

*B. R. Sullivan, David L. Dickson* and *Maurice W. Coburn* for appellant.

*Arthur J. Harvey* for respondent.

HALPERN, J. The defendant appeals from an order of the Trial Term, setting aside a verdict of no cause of action in an action for false imprisonment. The trial court had set aside the verdict upon the ground that it had committed error in admitting certain evidence over the objection of the plaintiff.

The plaintiff had been employed by the defendant as a saleswoman in its store in the town of Menands in Albany County. The complaint alleged that, on January 24, 1948, store detectives in the employ of the defendant " willfully, wrongfully, maliciously and forcefully " imprisoned the plaintiff and took her to the headquarters of the detectives in the store and detained her there against her will until she signed a statement which the detectives had prepared and " for more than one hour

thereafter ''. The complaint alleged that by reason of the arrest, the plaintiff '' suffered great mental and bodily distress and was made sick '' and '' was greatly injured in her character and reputation, all to her damage in the sum of * . * * $25,000.00 ''.

The answer consisted solely of a general denial. No affirmative defense of justification was pleaded nor was there any plea in mitigation of damages.

According to the plaintiff's testimony upon the trial, the events which led up to the alleged false imprisonment were the following: There was a cloakroom at the rear of the store used by all the salesgirls. The plaintiff claimed that she saw a purse lying on the floor of the cloakroom and that she picked it up and put it under one of the boxes in which the salesgirls kept their personal belongings, in the belief that the purse belonged to a fellow employee and with the intention of returning it to her. The plaintiff claimed that she later asked the fellow employee whether she had lost the purse and, upon learning that she had not, the plaintiff removed the purse from the place where she had left it and was on her way to the service desk of the store to turn it in, when she was apprehended by the detectives employed by the defendant. It was proved upon cross-examination that the plaintiff signed a statement prepared by one of the detectives in which she admitted that she had taken the purse from its hiding place at the close of the business day with the intention of keeping the money in the purse and that she was about to leave the store to go home when she was stopped by the detectives. The plaintiff denied the truthfulness of the statement, although she admitted that she had signed it.

As part of its case, the defendant offered evidence that for some time prior to January 24, 1948, there had been complaints from employees about the loss of articles of apparel and money from the cloakroom. The plaintiff objected upon the ground that this had not been pleaded as part of the answer but the court overruled the objection and received the evidence '' on the subject of good faith, lack of malice and probable cause '', as going '' to the question of damages ''. The same objection was made upon several occasions during the trial and the same ruling was made by the court. Extensive evidence was admitted of prior episodes involving the loss of articles left in the cloakroom and the complaints made by the salesgirls and their efforts to apprehend the thief.

The salesgirls ultimately hit upon the plan of putting two marked dollar bills in a purse and leaving the purse on the floor

of the cloakroom as a means of catching the thief. It was this purse which the plaintiff had picked up.

The trial court submitted the case to the jury solely upon the question of whether the plaintiff had, in fact, been detained against her will during the period of the interview by the store detectives or whether she had accompanied them and remained with them voluntarily. No issue of justification was submitted to the jury since that issue had not been pleaded by the defendant. The jury was told that it was to award compensatory damages, if the plaintiff had in fact been detained, and that it could award exemplary damages in addition if it found that the " arrest and imprisonment was maliciously, wantonly, recklessly and willfully made ". The court specifically charged that evidence of good faith had no bearing upon the claim for compensatory damages but that it related only to the subject of punitive damages.

The jury reported a verdict of no cause of action. Thereafter the court set the verdict aside upon the ground that the evidence of prior thefts or losses of property had been improperly admitted as bearing upon the defendant's liability for exemplary damages, since no plea in mitigation of damages had been interposed by the defendant.

In our opinion, the setting aside of the verdict was correct and the trial court gave the correct reason for its action.

In view of the state of the pleadings, the only issue in the case, so far as the claim for compensatory damages was concerned, as correctly stated by the trial court in its charge, was whether the plaintiff had been detained against her will. The possible justification that the plaintiff had been lawfully arrested for a crime of which she was actually guilty could not be considered by the jury since no affirmative defense of justification had been pleaded (*Wilson* v. *Manhattan Ry. Co.*, 2 Misc. 127, affd. on opinion below, 144 N. Y. 632; *Peterson* v. *New York Cons. R. R. Co.*, 230 N. Y. 566, affg. 186 App. Div. 965).

Furthermore, even if the justification of lawful arrest had been pleaded, the evidence to which the plaintiff objected would not have been admissible upon that issue, since it did not have any probative value as tending to establish actual guilt on the part of the plaintiff. Some of the episodes referred to had occurred before the plaintiff entered the employ of the defendant and, even as to those which had occurred during the period of employment, there was no basis in the evidence for an inference that the plaintiff was in any way responsible for the disappearance of the articles.

The evidence had some bearing upon the defendant's claim of good faith but that was not a defense to the claim for compensatory damages (apart from the fact that it had not been pleaded). The arrest was for a misdemeanor at most and an arrest for a misdemeanor either by a private person or a peace officer without a warrant is made at the peril of the person making the arrest. Good faith is no excuse in an action for false imprisonment, if an innocent person is mistakenly arrested without a warrant on a charge of a misdemeanor (Code Crim. Pro., §§ 177, 183; *McLoughlin* v. *New York Edison Co.,* 252 N. Y. 202).

It is thus apparent that, for a variety of reasons, the trial court was right in holding that the evidence was not admissible as a defense to the claim for compensatory damages.

It must be recognized, however, that the claim for punitive or exemplary damages was properly in the case. Such a claim need not be explicity pleaded (*Korber* v. *Dime Sav. Bank of Brooklyn,* 134 App. Div. 149). If the complaint charges that the defendant acted with malice and willfulness, it is sufficient to authorize the jury to award punitive damages. Punitive damages may be recovered against an employer because of the malicious act of his employee only if it is shown (a) that the malicious act was authorized or ratified by the defendant; (b) that the act was that of an unfit employee who had been employed or retained by the defendant with knowledge of his unfitness; or (c) that the act was that of a managerial agent or employee whose willfulness or maliciousness was chargeable to the defendant (4 Restatement, Torts, § 909). One of the detectives, who participated in the detention of the plaintiff, was the head of the defendant's protective department and, under the rule stated, the jury might have found that he was a managerial employee for whose conduct the defendant might be held liable in punitive damages. In any event, the issue of punitive damages must be regarded as one of the issues in the case because the plaintiff's attorney acquiesced in the court's ruling to that effect and acquiesced in the court's charge submitting the issue of punitive damages to the jury.

Upon the issue of punitive damages, proof of the good faith of the defendant and the reasonableness of its conduct was obviously relevant. Even though the evidence did not go so far as to establish the plaintiff's guilt as a justification for the arrest, it was proper to prove surrounding circumstances tending to establish that the defendant did not act maliciously or willfully but acted in good faith.

It would seem that, with the issue of punitive damages tendered by the plaintiff, a general denial by the defendant would be sufficient to allow the defendant to introduce proof tending to establish that it had not acted with the alleged malice or willfulness. This was apparently the view of the Trial Judge at the time of the trial. But the contrary view, which he reached upon examination of the question after the conclusion of the trial, is the correct one. Section 262 of the Civil Practice Act specifically provides: " A partial defense may be set forth, but it must be expressly stated to be a partial defense to the entire complaint, or to one or more separate causes of action therein set forth  *  *  *  Matter tending only to mitigate or reduce damages is a partial defense, within the meaning of this section ". Section 339 of the Civil Practice Act provides: " In an action to recover damages for a personal injury, or an injury to property, the defendant may prove, at the trial, facts not amounting to a total defense, tending to mitigate or otherwise reduce the plaintiff's damages, if they are set forth in the answer ".

It has been authoritatively held that the effect of sections 262 and 339 of the Civil Practice Act is to require the pleading of an affirmative defense if the defendant intends to show (a) that compensatory damages, which had once been suffered, had been subsequently extinguished or released or (b) that the circumstances were such that no punitive damages should be allowed (*McClelland* v. *Climax Hosiery Mills*, 252 N. Y. 347; *Fleckenstein* v. *Friedman*, 266 N. Y. 19; *Sanders* v. *Rolnick*, 188 Misc. 627, affd. 272 App. Div. 803).

As Chief Judge CARDOZO said in his concurring opinion in *McClelland* v. *Climax Hosiery Mills* (*supra*, p. 355): " The rule came to be established that the mitigating circumstances referred to [in Civ. Prac. Act, § 339, and its predecessor, Code Civ. Pro., § 536] were those that bore upon a defendant's liability for punitive or exemplary damages by reducing or softening the moral or social culpability attaching to his act, or upon his liability for actual damages by showing that, though suffered, they had been partially extinguished ".

The Civil Practice Act sections refer to the " reduction " or " mitigation " of damages and it might be argued that the denial of punitive damages *in toto* is not a reduction or mitigation of such damages. But punitive damages do not constitute a separate cause of action; they merely constitute an element of the single total claim for damages. The complete denial of punitive damages is therefore a mitigation or reduction of the total

damages sought by the plaintiff and falls within the terms of the "mitigation of damage" statute. Furthermore, as to punitive damages, no real distinction can be drawn between proof tending to show that the amount of the damages awarded ought to be less than that claimed by the plaintiff and proof tending to show that there ought not to be any award of punitive damages at all. Any evidence which would tend to defeat the claim for punitive damages would also necessarily tend to reduce the amount of the punitive damages, if any were allowed; the converse is also true. We must, therefore, hold that the statute is applicable whether the new matter sought to be introduced by the defendant technically "mitigates" the plaintiff's claim for punitive damages or tends to destroy it altogether.

The defendant in an action for willful false imprisonment does not have the right, by virtue of a general denial, to introduce independent evidence of facts tending to show that he had acted without malice and in good faith. If he wishes to have that right, he must plead the facts as an affirmative defense.

This conclusion on its face runs counter to the general principle that whatever the plaintiff is required to establish in order to make out his claim, the defendant is entitled to disprove under a general denial. A plaintiff seeking the recovery of punitive damages has the burden of pleading and proving malice and the independent evidence offered by the defendant tending to show the absence of malice may be said to be designed to disprove or defeat the plaintiff's claim for punitive damages. But, despite the logic of this reasoning, the rule requiring affirmative pleading follows from the language of the Civil Practice Act sections. The proof relates to damages and tends to mitigate the damages, in the broad sense discussed above, and therefore the matter relied upon must be pleaded. Furthermore, the stated principle as to the adequacy of a general denial is not an inflexible rule of law applicable to all cases. "[I]t seems a mistake to rely upon it as anything more than a very superficial rule of thumb." (Clark on Code Pleading [2d ed.], p. 608.) It is subject to many exceptions, both statutory and judge-made, and it is impossible to determine when matter to be offered in defense must be pleaded affirmatively merely by a logical manipulation of the general principle (cf. Civ. Prac. Act, § 242, providing that a defendant must plead any matter "which if not raised would be likely to take the opposite party by surprise"). Here, the general principle must yield to the mandate of the specific statute.

The rule requiring the affirmative pleading of facts tending to mitigate or defeat the claim for punitive damages originated in section 165 of the Code of Procedure of 1848, which applied only to actions for libel or slander. Subsequently the rule was embodied in section 536 of the Code of Civil Procedure. This section was "intended to extend to all actions for wrongs * * * the rule of pleading established in libel and slander". (Throop's Notes to the Code of Remedial Justice of 1876, p. 106.) The original purpose of the Legislature, in adopting the statute, is a matter of speculation. A rationalization of the rule may, perhaps, be found in the principle of fair warning which was subsequently expressly stated in section 242 of the Civil Practice Act (*supra*), borrowed by New York State from the English practice in 1920 (L. 1920, ch. 925). Or the rule may be justified simply upon the ground of "administrative convenience" (cf. *Fleckenstein* v. *Friedman,* 266 N. Y. 19, 25, *supra*). In any event, whether the rule appears to us to be a reasonable one or not, it is based upon a statutory provision, the construction of which is too well settled to permit of change without legislative action.

As a matter of fact, upon this appeal, the appellant did not challenge the soundness of the rule that evidence in mitigation of punitive damages is not admissible in the absence of an appropriate affirmative defense but it sought to justify the admission of the evidence upon wholly different grounds. Among other things, it argued that the evidence was admissible as a necessary part of telling the whole story and particularly as tending to offset any claim that the plaintiff had been wrongfully entrapped by her fellow employees. Whatever merit this claim may have, it cannot be properly considered upon this record since the evidence was admitted specifically for the single purpose of mitigating the claim for punitive damages.

The appellant also raises the question upon this appeal of whether the improperly admitted evidence was prejudicial to the plaintiff. In view of the narrow issue submitted by the court to the jury, the jury must have found that the plaintiff was not detained against her will at all and the improperly admitted evidence could not have had any legitimate bearing upon this finding. However, we cannot say that the jury's determination of the narrow issue submitted to it was not in any way affected by improper inferences which it may have drawn from the evidence of prior losses and thefts. If the evidence had been properly admitted under a proper pleading upon the issue of punitive damages, the plaintiff would have had to run the

risk that the evidence might improperly have a prejudicial effect upon other unrelated issues in the case but, since the evidence was erroneously admitted, the plaintiff was wrongfully subjected to the risk of prejudice and a new trial must be had.

The order granting a new trial should be affirmed, with costs to the respondent, to abide the event. Settle form of order on notice.

FOSTER, P. J., BERGAN, COON and IMRIE, JJ., concur.

Order granting new trial affirmed, with costs to respondent to abide the event. Settle form of order on notice.