**UNITED STATES of America ex rel. Ruth FARNUM, Petitioner,**

v.

**John F. McNEILL, M.D., as Director of Matteawan State Hospital, Respondent.**

United States District Court
S. D. New York.
Jan. 10, 1958.

Ruth Farnum, petitioner, pro se.

Louis J. Lefkowitz, Atty. Gen., for respondent, Isadore Siegel, Asst. Atty. Gen., in charge of Div. of Mental Hygiene, of counsel.

LEVET, District Judge.

Ruth Farnum, an inmate of Matteawan State Hospital for the criminally insane, has petitioned this court for a writ of habeas corpus.

Upon the initial petition, a handwritten letter dated June 14, 1957, the application for the writ was denied since it did not appear that the petitioner had exhausted her state remedies or that the procedure followed by state officials in obtaining her commitment was violative of due process. However, by order dated July 16, 1957, an application by the petitioner for reargument was granted, and the clerk of this court was directed to issue a writ of habeas corpus ad testificandum directing that petitioner be produced.

At the court's suggestion and at petitioner's request, she was assigned an able and experienced attorney to represent her. When the matter came on for hearing, however, the petitioner, in open court, arbitrarily and capriciously rejected his services. Nevertheless, as a friend of the court, he attended the first session. Petitioner was also afforded ample opportunity to obtain counsel of her own choosing, but she did not do so.

Hearings on reargument of the application for habeas corpus were held on September 11, October 4 and November 18, 1957. After hearing the petitioner upon her own behalf, and the Attorney General on behalf of the respondent, and after examining the exhibits, affidavits and briefs or memoranda submitted on behalf of the respective parties, I have concluded that the petitioner's confinement is not violative of due process and that no basis exists for the granting of a writ of habeas corpus by this court.

The following is a summary of the facts relating to petitioner's confinement:

1. On July 3, 1948, the petitioner was arrested on a charge of assault in the third degree. The arrest was made in petitioner's apartment by two police officers without a warrant over eight hours after the commission of the alleged assault. A complaint was sworn out by Hazel Mathis, the victim of the alleged assault, and petitioner was arraigned before New York City Magistrate Harry G. Andrews. The complaint was read to the petitioner, and she was informed of her right to secure an adjournment in order to obtain counsel or witnesses. She pleaded not guilty and requested an adjournment. The case was thereupon adjourned to July 6, 1948, petitioner being paroled in her own custody.

2. The case was subsequently adjourned from July 6, 1948 to July 12, 1948 in order to permit petitioner to obtain counsel of her own choosing.

3. On July 12, 1948, petitioner appeared before Magistrate Morris Ploscowe and requested an adjournment on the ground that her attorney was out of town. When questioned by the Magistrate, petitioner refused to reveal the name of the attorney because she had not yet engaged him and she did not know whether she would in fact retain him. Petitioner refused to have counsel assigned to her and agreed to return at 2:00 P.M. with an attorney. That afternoon, petitioner appeared with counsel. A conference in chambers ensued, during which petitioner disappeared. A warrant for petitioner's arrest was issued.

4. On August 24, 1948, the petitioner was brought before Magistrate Andrews by an officer. Petitioner waived examination. Bail was fixed at $100 and the case was referred to the Court of Special Sessions for trial.

5. An information charging petitioner with assault in the third degree

was filed in the Court of Special Sessions on September 16, 1948.

6. After several adjournments, petitioner was tried in the Court of Special Sessions on January 3, 1949 before Judges Nathan D. Perlman, Joseph V. Loscalzo and William B. Northrop and was found guilty. At the trial she was represented by counsel of her own choosing. After her conviction, but before sentence, she was ordered committed to Bellevue Hospital for observation and report.

7. On January 26, 1949, a report was submitted by the Psychiatric Division of Bellevue Hospital to the Court of Special Sessions stating that petitioner was in such a state of insanity as to be incapable of understanding the charges made against her.

8. On February 14, 1949, Judge Northrop on his own motion ordered petitioner's convictions set aside, and further ordered petitioner discharged on her own recognizance.

9. On February 25, 1949, Hon. Benedict D. Dineen of the New York Supreme Court, New York County, granted petitioner's application for a writ of habeas corpus on the ground that the record of the proceedings in the Court of Special Sessions did not lay an adequate foundation for petitioner's commitment. Petitioner was ordered returned to the Court of Special Sessions for further proceedings.

10. On February 25, 1949, petitioner's case was restored to the calendar in the Court of Special Sessions and a bench warrant was issued to bring petitioner back from Bellevue Hospital. Petitioner entered a plea of not guilty and bail was fixed in the amount of $5,000.

11. On March 1, 1949, on motion of the District Attorney, Judges Northrop, Loscalzo and Perlman of the Court of Special Sessions, by whom petitioner had been found guilty, unanimously voted to vacate the February 14, 1949 order of Judge Northrop, which had purported to set aside the judgment of conviction against petitioner. March 9, 1949 was set as the date of sentencing. It does not appear that petitioner or counsel representing her was present to oppose the motion of the District Attorney.

12. On March 9, 1949, petitioner's motion for arrest of judgment was denied and she was again ordered committed to Bellevue Hospital for observation and report.

13. By letter dated March 17, 1949, the Psychiatric Division of Bellevue Hospital advised the Court of Special Sessions that petitioner was suffering from a mental disorder diagnosed as a paranoid condition. Her commitment to a State mental institution was recommended.

14. On April 8, 1949, Hon. John E. McGeehan of the New York Supreme Court, New York County, granted petitioner's application for a writ of habeas corpus on the ground that she had been confined at Bellevue Hospital for an unreasonably long period of time. Petitioner was again remanded to the Court of Special Sessions for a sanity hearing.

15. A hearing on petitioner's sanity took place in the Court of Special Sessions on April 25 through April 28, 1949, before Judges Irving Ben Cooper, Myles A. Paige and Irwin D. Davidson. Petitioner was represented by two attorneys and a record of 473 pages was compiled. Decision was reserved, to be rendered on May 3, 1949.

16. On May 3, 1949, the following decision was rendered in open court:

"Justice Cooper: On the basis of all the proceedings heretofore had from the inception of this case, on the various rulings heretofore entered and made part of the record, on the basis of the Bellevue Hospital report dated January 26, 1949 and the subsequent communications addressed to this Court by that institution, on the basis of the proceedings had before this particular tribunal made up of myself and my learned colleagues, Judge Davidson and Judge Paige, we feel that we have complied with every prerequisite laid down in the Code, particu-

larly Section 875 [Code Cr.Proc.] and the various sections referred to therein, and it is our seasoned and reflected judgment that this defendant will best be treated in the Matteawan State Hospital, and an order will be entered to that effect."

17. Thereafter, an order was signed committing petitioner to Matteawan State Hospital until no longer in such a state of insanity as to be incapable of understanding the charge against her or of making her defense thereto.

■ It is clear from the foregoing summary of facts that petitioner's case was beset with certain irregularities from its inception. However, the sole question before this court is whether these irregularities, either singly or collectively, rendered petitioner's ultimate confinement at Matteawan State Hospital violative of due process. In my opinion, this question must be answered in the negative.

■■ There can be little doubt that petitioner's arrest without a warrant for a misdemeanor, not committed in the presence of the arresting officers, was illegal. New York Code of Criminal Procedure, Section 177. However, while such an illegal arrest may give rise to a personal liability on the part of the arresting officer (see Gill v. Montgomery Ward & Co., Inc., 3rd Dept.1954, 284 App.Div. 36, 129 N.Y.S.2d 288, 49 A.L.R. 2d 1452), the New York courts have consistently held that it does not affect the validity of subsequent proceedings against the person arrested, e. g., Rose v. McKean, Sup.Ct.1948, 190 Misc. 982, 76 N.Y.S.2d 391; People v. Baxter, Co.Ct. 1942, 178 Misc. 625, 36 N.Y.S.2d 1020, appeal dismissed App.Div., 37 N.Y.S.2d 489; People v. Iverson, 2nd Dept.1899, 46 App.Div. 301, 61 N.Y.S. 220.

Consequently, petitioner's illegal arrest provides no basis for the granting of a writ of habeas corpus by this court. See Stallings v. Splain, 1920, 253 U.S. 339, 343, 40 S.Ct. 537, 64 L.Ed. 940; United States ex rel. Ling Yee Suey v. Spar, 2 Cir., 1945, 149 F.2d 881, 883; Curran v. Shuttleworth, 6 Cir., 1950, 180 F.2d 780, 781; United States ex rel. Brink v. Claudy, D.C.W.D.Pa., 1951, 96 F.Supp. 220, 224, affirmed 3 Cir., 1951, 194 F.2d 535.

■ This court has examined the information filed against petitioner in the Court of Special Sessions on September 16, 1948. It follows the form prescribed by Section 742 of the New York Code of Criminal Procedure; it sets forth the nature of the crime with which petitioner was charged and the acts constituting said crime; and in all respects appears sufficient to have conferred jurisdiction upon the Court of Special Sessions over petitioner's case.

■ The February 14, 1949 order of Judge Northrop, which purported to set aside petitioner's conviction, is unavailing as a basis for the granting of a writ of habeas corpus by this court. The New York City Criminal Courts Act specifically enumerates the circumstances under which one judge is authorized to act on behalf of the Court of Special Sessions. In this regard, Section 34 of the Act provides:

"§ 34. Parts of court; by whom held

"Except as hereinafter provided each part of the court shall be held by one or three justices, and any determination, order or judgment of two of them when three hold court shall be the determination, order or judgment of the court; provided, however, that the chief justice or any associate justice may be assigned to and is empowered to hold any part of the court for the purpose of taking pleas, conducting trials [in misdemeanor cases involving violations of the provisions of article eighty-eight of the penal law, and trials or proceedings under the provisions of title VII-B of part six of the code of criminal procedure] or disposing of motions preliminary to trials or hearing reports as to defendants released upon probation, and each justice when so assigned

shall have all the powers of the court of special sessions to sentence a defendant upon a plea of guilty or upon conviction, suspend sentence, place upon probation, or revoke probation and remand or sentence the defendant. * * * "

■■ Neither this section nor any other section of the Act confers upon a single judge the authority to vacate a conviction rendered at a trial over which three judges presided. It seems clear, therefore, that Judge Northrop, sitting alone, did not have the authority or jurisdiction to vacate petitioner's conviction and that his order, which purported to do so, was a nullity. See People v. May, 2nd Dept.1939, 258 App.Div. 903, 16 N.Y.S. 2d 1013. Under these circumstances, the fact that this order was subsequently vacated by three judges of the Court of Special Sessions, including Judge Northrop, in no way affected petitioner's rights and did not place her in double jeopardy as she has frequently contended. Since the vacation of Judge Northrop's order did nothing more than clear the record, the court was under no obligation to hear petitioner or her counsel in opposition thereto, and the failure to do so did not constitute a violation of due process.

The commitment procedure to be followed by the Court of Special Sessions is prescribed by Sections 875 and 659 through 662-c of the New York Code of Criminal Procedure. Section 875 is as follows:

"§ 875. Procedure in court of special sessions of the city of New York

"If at any time before final judgment it shall appear to the court of special sessions of the city of New York that there is reasonable ground for believing that a defendant before it is in such state of idiocy, imbecility or insanity that he is incapable of understanding the charge, information or proceedings or of making his defense, or if the defendant makes a plea of insanity to the information,

instead of proceeding with the trial, the court, upon its own motion, or that of the district attorney or the defendant, may in its discretion order such defendant to be examined to determine the question of his sanity, and the procedure therefor shall be as set forth in sections six hundred fifty-nine, six hundred sixty, six hundred sixty-one, six hundred sixty-two, six hundred sixty-two-a, six hundred sixty-two-b and six hundred sixty-two-c. * * * "

Section 662-b is in part as follows:

"§ 662-b. Procedure where defendant is found to be in a state of idiocy, imbecility or insanity

"If, after giving the district attorney and counsel for the defendant opportunity to be heard thereon, the court is of the opinion that the defendant is in such state of idiocy, imbecility or insanity as to be incapable of understanding the charge against him or the proceedings or of making his defense, the trial or proceedings must be suspended until he is no longer in such state of idiocy, imbecility or insanity as to be incapable of understanding the charge against him and the proceedings and of making his defense, and the court shall commit the defendant to an appropriate institution of the department of correction. * * * "

■ It is apparent from a reading of these sections that the Court of Special Sessions is empowered to institute a lunacy proceeding and to issue a commitment order based thereon at any time after it has acquired jurisdiction over a defendant and prior to final judgment, which means prior to sentencing. See People v. Collins, 1st Dept.1946, 271 App. Div. 511, 67 N.Y.S.2d 53, 58.

■ However unfortunate petitioner's incarceration in a criminal institution for over eight years on a minor assault charge may be, the fact remains that she was committed by a court of competent jurisdiction after an exhaustive sanity

hearing during which she and her counsel were given ample opportunity to be heard. There is adequate proof in the record of the April, 1949 sanity proceeding to sustain the court's finding that petitioner was in such a state of insanity as to be incapable of understanding the charge against her or of making her defense thereto. Under these circumstances, there exists no basis on the merits of petitioner's case for intervention by this court since her commitment to Matteawan State Hospital fully complied with the requirements of New York State law and with the requirements of due process.

█ In view of the singular circumstances surrounding petitioner's confinement, I have chosen to scrutinize her application on its merits without regard to whether or not she had fully exhausted her state remedies. In this regard, however, it should be noted that though petitioner has commenced over ten habeas corpus proceedings in the New York State courts,[1] she does not appear to have fully exhausted her remedies as to any one of them. As is stated by Waterman, Circuit Judge, in United States ex rel. Kozicky v. Fay, 2 Cir., 248 F.2d 520, 521;

> "A federal court may not grant a writ of habeas corpus to a state prisoner, save in exceptional circumstances, unless the prisoner has availed himself of one of the corrective processes available in the courts of the state. 28 U.S.C.A. § 2254; Ex parte Hawk, 1944, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572; Brown v. Allen, 1953, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469. This usually entails asserting the merits of the alleged deprivation of federally guaranteed rights at each step in the state courts and an attempt to obtain relief from the United States Supreme Court. * * *"

Accordingly, upon reargument, petitioner's application for a writ of habeas corpus is denied. So ordered.

1. See i. e., Richardson ex rel. Farnum v. Collins, Sup.Ct.1949, 90 N.Y.S.2d 583.