Carol Crosswell **SMITH**, Plaintiff,

v.

**LITTLE, BROWN & COMPANY** and
Edith Patterson Meyer,
Defendants.

No. 62 Civ. 2462.

United States District Court
S. D. New York.

May 16, 1967.

Marvin L. Schwartz, New York City, for plaintiff.

Weil, Gotshal & Manges, New York City, for defendant Little, Brown & Co.; Edward C. Wallace, Marshall C. Berger, New York City, of counsel.

OPINION

McLEAN, District Judge.

This is an action for plagiarism of plaintiff's uncopyrighted, unpublished manuscript. The plagiarism occurred in a book entitled "Pirate Queen" by Edith Patterson Meyer, which was published by Little, Brown & Co. in 1961.

Mrs. Meyer was never served with process, hence this action was tried against Little, Brown alone in May 1965. Plaintiff has begun a separate action against Mrs. Meyer in Connecticut which is still pending.

I upheld plaintiff's claim of plagiarism and granted her an injunction, which issued on July 19, 1965, restraining Little, Brown from selling or otherwise disposing of any copies of the Meyer book.

Smith v. Little, Brown & Company, 245 F.Supp. 451 (S.D.N.Y.1965).

This judgment was affirmed by the Court of Appeals on May 23, 1966. Smith v. Little, Brown & Company, 360 F.2d 928 (2d Cir. 1966).

█ We have now reached the stage of ascertaining plaintiff's damages and defendant's profits. A hearing was held for this purpose on February 9, 1967. The court may properly consider not only the evidence introduced at this hearing, but also any evidence previously introduced at the trial in 1965 which may be relevant to the present issues. Findings of fact are set forth at length in the court's previous opinion. They need not be fully repeated here.

Plaintiff claims (1) actual compensatory damages, (2) punitive damages, (3) defendant's profits derived from its sale of the offending book prior to the issuance of the injunction.

### Compensatory Damages

█ The manuscript which plaintiff submitted to Little, Brown in April 1957 and which Little, Brown rejected on May 29, 1957, consisted only of a nine-page summary of plaintiff's proposed novel, a six-page outline of the plot, and the first five complete chapters. Although plaintiff has done some further work on the book, she has never finished it. She testified that in 1961 she discussed her book with another publisher, Houghton Mifflin & Co., and that Houghton Mifflin & Co. lost interest when it heard of Mrs. Meyer's book published by Little, Brown. There is no showing, however, that Houghton Mifflin would have published plaintiff's novel but for the Meyer book. Whether it would have or not is wholly speculative. Plaintiff has thus failed to prove that the plagiarism deprived her of the sale of her work which she could otherwise have achieved. Under the circumstances, and bearing in mind the fact that plaintiff has never produced a completed book, plaintiff's expenses for travel and research are not proper elements of damage. Plaintiff is not in any way dependent for her livelihood upon novel writing; that is purely an avocation. She did not attempt to place any value on her time. I conclude that plaintiff has not proved any actual damage.

### Punitive Damages

Plaintiff contends that the court should, in its discretion, assess punitive damages against defendant for two reasons: (1) because defendant's employee, Miss Jones, was a party to the plagiarism; (2) because defendant, after it received notice of plaintiff's claim, was recklessly indifferent to her rights and proceeded to order a second and a third printing of Mrs. Meyer's book. Before considering the law, I will review the evidence which bears upon each contention.

Miss Jones was and is head of Little, Brown's Juvenile Department. She is not an officer of Little, Brown. Her duties comprise the procurement and processing of manuscripts for possible publication for juvenile readers. A juvenile book is accepted for publication by Little, Brown only after it has received the affirmative votes of three out of the four members of the Juvenile Board. Miss Jones was a member of that Board. She made recommendations to it from time to time, some of which were accepted and others of which were rejected.

Mrs. Meyer's book was a juvenile book, hence it came within the scope of Miss Jones' duties. Plaintiff's manuscript was not intended to be a juvenile book. Miss Jones did not participate in the decision to reject it. Miss Jones knew of its existence, however, and had access to it. In granting the injunction, I found that Miss Jones either showed plaintiff's manuscript to Mrs. Meyer or gave her a detailed account of it. There was no other probable explanation of how Mrs. Meyer was able to make use of plaintiff's manuscript, as she obviously did.

The second contention is based upon the acts or omissions, not of Miss Jones, but of Williams. In 1957 Williams was manager of Little, Brown's New York of-

fice. Beginning in about 1959 he became a vice-president in charge of defendant's trade department. He is now a senior vice-president.

The relevant facts are these. In early February 1962 plaintiff's then attorney, Vorenberg, a member of a Boston firm, advised Little, Brown that plaintiff had noted similarities between her manuscript and the Meyer book. Little, Brown's chairman of the board asked Williams to investigate. He assembled whatever file Little, Brown had with respect to its dealings with plaintiff and with Mrs. Meyer and invited Vorenberg to inspect it, which Vorenberg did.

Thereafter, on February 15, 1962, Vorenberg wrote to Williams setting forth fourteen instances described in Mrs. Meyer's book and inquiring as to Mrs. Meyer's sources for them. Williams transmitted this inquiry to Mrs. Meyer. On April 11, 1962 she replied. As to most of the incidents, Mrs. Meyer stated in substance that she had invented them. Williams took her word for it at the time. Little, Brown had had previous dealings with Mrs. Meyer and Williams believed her to be reliable.

This action was begun in June 1962. In September 1962 Williams met with Mrs. Meyer, who thereupon gave him a more detailed explanation of the procedure she had followed in doing research for her book. It does not appear, however, that she cited any source for these particular incidents.

Williams made no effort to compare plaintiff's manuscript with Mrs. Meyer's book. Such a comparison would have revealed the similarities which led me to conclude that plagiarism must have occurred. Little, Brown did not have a copy of plaintiff's manuscript in February 1962, as it had returned it to her in May 1957. Williams was not clear in his recollection as to whether he requested Vorenberg to send him a copy. In any event, he did not obtain one from Vorenberg.

In August 1962 plaintiff's present attorney, whose office is in New York, sent a copy of plaintiff's manuscript to defendant's New York attorneys. Williams has no recollection of ever having seen it. Finally, in January 1963, Williams did obtain possession of a copy of plaintiff's manuscript from plaintiff's New York attorney, but even then he did not read it carefully,

On October 19, 1962, Williams authorized a second printing of 2,000 copies of Mrs. Meyer's book. These were delivered in December 1962. In June 1963 he authorized a third printing of 2,000 copies, which were delivered in August.

New York law governs this case. The Court of Appeals has recently written at length upon the New York law of punitive damages. Roginsky v. Richardson-Merrell, Inc., Docket No. 30629, 378 F.2d 832 (2d Cir. April 4, 1967).

■ That decision announced two governing principles: (1) New York law does not impose punitive damages on a corporation unless its "management," i. e., its officers or directors, participated in or authorized or ratified the conduct complained of; (2) there must either be an actual intent to injure plaintiff or recklessness which is "close to criminality" (p. 1831).

■ Williams was a part of defendant's "management." Defendant is bound by his acts. But his conduct does not meet the second test. Granted that his investigation of plaintiff's claim was not thorough and may even be thought to have been negligent, plaintiff has not proved that Williams intended to injure her or that he was so recklessly indifferent to her rights as to be guilty of conduct which was "close to criminality." In *Roginsky*, the Court of Appeals held, on evidence which to my mind was stronger in favor of plaintiff than the evidence here, that it was error to submit the issue of punitive damages to the jury. In other words, the court held as a matter of law that plaintiff was not entitled to such damages. I need not go that far in this non-jury case. As trier of the fact I find and conclude that Williams' conduct was not of the type which entitles plaintiff to

punitive damages under New York law as interpreted and applied in *Roginsky*.

Miss Jones' conduct presents a somewhat different problem. She was a subordinate employee. She was not part of defendant's "management" as defined in *Roginsky*. Hence the first requisite is not met, and if the *Roginsky* rule is to be taken as applying to every case, that is an end of the matter.

But it is not clear that the Court of Appeals intended the *Roginsky* rule to be applied to every case. It there said (p. 842 n. 17):

> "Because defendant asserts, and plaintiff does not dispute, that for purposes of applying this rule to the case at bar 'management' includes only the presidents and vice-presidents of Richardson-Merrell and its Wm. S. Merrell Division, we need not decide whether, under New York law, the acts of inferior supervisory employees would otherwise be deemed the acts of the corporation for purposes of assessing punitive damages. See, e. g., Corrigan v. Bobbs-Merrill Co., 228 N.Y. 58, 71–72, 126 N.E. 260, 10 A.L.R. 662 (1920); Rose v. Imperial Engine Co., 127 App.Div. 885, 888, 112 N.Y.S. 8 (4th Dept. 1908), aff'd, 195 N.Y. 515, 88 N.E. 1130 (1909); Gill v. Montgomery Ward & Co., 284 App.Div. 36, 129 N.Y.S.2d 288, 294, 49 A.L.R.2d 1452 (3rd Dept. 1954)." [1]

■ It is necessary to decide here the question which the Court of Appeals in *Roginsky* did not decide. And in my opinion the cases referred to in the passage quoted above, notably Corrigan v. Bobbs-Merrill Co. and Gill v. Montgomery Ward & Co. indicate a New York rule which is less favorable to defendants than the rule applied in *Roginsky*. These cases do not hold that for purposes of punitive damages a corporation can be bound only by the acts of its officers and directors. Rather the principle appears to be that the corporation is bound by the acts of a subordinate employee who is a managing agent, provided that the agent was acting within the scope of his employment. See Restatement (Second), Agency § 217 C (1958).

Miss Jones was a supervisory employee. She could be regarded as a managing agent for this purpose. The only relevant New York authority that the court has found is Corrigan v. Bobbs-Merrill Co., 228 N.Y. 58, 126 N.E. 260, 10 A.L.R. 662 (1920), in which the court said that the knowledge of defendant's "literary editor and chief manuscript reader" was the knowledge of defendant. The opinion does not give enough details to permit an exact comparison between the status of that individual and that of Miss Jones.

It is more doubtful whether in making plaintiff's manuscript available to Mrs. Meyer, Miss Jones was acting in the scope of her employment. Her duties did not require her to deal with plaintiff's manuscript. This was processed in another department. And certainly it was not part of her duties to assist in plagiarism. There is no evidence that any officer of defendant participated in the plagiarism in any way, or knew of it, or authorized it or ratified it.

■ The courts have been reluctant to grant punitive damages. This is especially true in copyright cases. Only one such case has been found in which an award of punitive damages was approved. Press Pub. Co. v. Monroe, 73 Fed. 196 (2d Cir. 1896), appeal dismissed, 164 U.S. 105, 17 S.Ct. 40, 41 L.Ed. 367 (1896).

Later decisions have denied punitive damages in copyright actions. Szekely v. Eagle Lion Films, 140 F.Supp. 843 (S.D.

---

1. See also the Court of Appeals opinion denying rehearing, Roginsky v. Richardson-Merrell, Inc., 378 F.2d 832 (2d Cir. May 8, 1967). The opinion notes (p. 853):

"Counsel's final point is that it may have been a mistake to try the case and argue the appeal on the basis that complicity by defendant's presidents or vice-presidents must be shown to warrant a punitive award, see p. 842, n. 17."

N.Y.1956), aff'd, 242 F.2d 266 (2d Cir. 1957), cert. denied, 354 U.S. 922, 77 S.Ct. 1382, 1 L.Ed.2d 1437 (1957); Nash v. Alaskan Airlines, 94 F.Supp. 428 (S.D. N.Y.1950).

Punitive damages are of course a pure windfall to a plaintiff. They amount to a penalty against a defendant. They should be awarded only in an extreme case. After careful consideration I have concluded that plaintiff has not made a strong enough showing to justify punishing defendant in this fashion because of the acts of Miss Jones. In the exercise of the court's discretion, plaintiff's prayer for punitive damages is denied.

### Profits

At the trial defendant introduced evidence to show that it suffered a net loss of $581.70 on publishing Mrs. Meyer's book. Plaintiff does not challenge the accuracy of defendant's figures, but attacks the method of computation in various respects. With one exception, these contentions are without merit and may be briefly disposed of.

1. *Salvage Value of Plates.* The uncontested evidence is that the plates were made of plastic and have no salvage value. Hence defendant's expenses of publication cannot be reduced on this account.

2. *Share of General Overhead.* The rule is that overhead which assists in the preparation of the infringing work should be credited to the infringer. Sheldon v. Metro-Goldwyn Pictures Corp., 106 F.2d 45 (2d Cir. 1939), aff'd, 309 U.S. 390, 60 S.Ct. 681, 84 L.Ed. 825 (1940).

See Alfred Bell & Co. v. Catalda Fine Arts, Inc., 86 F.Supp. 399 (S.D.N.Y. 1949), aff'd, 191 F.2d 99 (2d Cir. 1951).

Defendant offered no detailed evidence on this point, but in refraining from doing so, defendant relied on the representation of plaintiff's attorney at the trial which both defendant and the court understood to mean that plaintiff did not question this item. It is too late for plaintiff to question it now. I will allow this credit.

3. *Royalties Paid by Defendant to Mrs. Meyer.* Clearly, these royalties were an item of expense to defendant. They are properly deductible. Sheldon v. Metro-Goldwyn Pictures Corp., supra. Plaintiff is free to claim these royalties in her pending action against Mrs. Meyer.

4. *Cost of Printing Books on Hand.* Defendant concedes that plaintiff is correct on this. 9,866 copies were printed. 6,942 were sold and 923 were given away by defendant to reviewers, newspapers, etc., leaving 2,001 copies on hand. The total printing cost of the 9,866 copies was $6,074.24. Dividing this figure by 9,866 gives a printing cost per copy of $0.6156. Multiplying this cost per copy by 2,001 copies gives a total printing cost of $1,231.81 for the copies on hand. Defendant is not entitled to credit for this item. Hence the net result is that instead of a loss of $581.70, defendant realized a net profit of $650.11.

The question remains whether plaintiff's recovery should be still further reduced by an apportionment of this profit. It is true that the material plagiarized from plaintiff constituted a comparatively small part of Mrs. Meyer's total work, but I have already found, in granting the injunction, that Mrs. Meyer appropriated a substantial portion of plaintiff's work, viewed both quantitatively and qualitatively. It is impossible on this record to attribute any particular part of defendant's sales of Mrs. Meyer's book to the plagiarized portion. The people who bought the book obviously did not know that any of it was plagiarized. Presumably they bought it because they wanted to read a book about a "Pirate Queen." Defendant's profit is due to the book as a whole, not to any particular chapter or paragraph. The book as a whole infringed plaintiff's common law copyright. Under the circumstances, I believe that the only fair thing to do is to award to plaintiff the entire amount of defendant's small profit.

I am aware of Orgel v. Clark Boardman Co., 301 F.2d 119 (2d Cir. 1962), cert. denied, 371 U.S. 817, 83 S.Ct. 31, 9 L.Ed. 2d 58 (1962), in which the court found that the evidence suggested "some division which may rationally be used as a

springboard" (301 F.2d 119 at 121). I see none here.

Pursuant to Rule 52(a) this opinion constitutes the court's findings of fact and conclusions of law.

Plaintiff is entitled to judgment in the amount of $650.11. If plaintiff claims interest on this amount the parties may submit memoranda on that point upon the settlement of the judgment.

Settle judgment on notice.