Howard E. Goldfluss, J.
On January 26, 1976, police officers entered a topless bar known as the "Cookie Jar” located in the County of New York. They watched the performance of the female defendants, whom they claim were dancing in a complete state of nudity. During the course of this performance, they saw what they believed to be obscene gestures by the said defendants. They therefore arrested the females charging them with participating in an obscene performance, and the male defendants were likewise arrested for promoting said performance, in violation of section 235.05 of the Penal Law.
Defendants now move to dismiss the accusatory instrument on the grounds that the said arrests were unlawful by reason of the fact that no judicial scrutiny was made of the alleged obscene acts prior to the arrest. The thrust of their argument is that the police officers were not empowered to substitute their judgment for a court on the issue of obscenity and that such warrantless arrests were therefore invalid. Moreover, they take the position that such arrest of the performers in the midst of their live exhibition, without such judicial scrutiny, is a prior restraint which irrevocably halted the dissemination of free expression protected by the First Amendment.
The People take the position that pursuant to CPL 140.10, a police officer is empowered to arrest a person for any offense when he has reasonable cause to believe that such person has committed that offense in his presence. Accordingly, they maintain that the arrest made herein differs in no way from *379 any other arrest which a police officer of the City of New York, under authority vested in him by CPL 140.10, is authorized to execute.
The subtle issues of prior scrutiny as it applies to obscenity have been the subject of much judicial review. First, Fourth and Fourteenth Amendment questions have been raised in such decisions, which will be discussed herein. There is a delicate balance between the right of society to ban the proliferation of obscenity for its own sake and the infringement of the rights of individual expression.
The defendants strongly rely on Doran v Salem Inn (422 US 922). In that case the petitioners were corporations who provided topless dancing in bars they owned. In affirming the injunction of a law enforcement official from enforcing a North Hempstead, New York ordinance which prohibited topless dancing, the Supreme Court took the position that the "ordinance would have to fail.” The court came to the conclusion that the law was overbroad. This ordinance not only prohibited topless dancing in bars but also prohibited any female from performing in any public place with uncovered breasts. There was, in that statute, no limit to interpretation of the term "public place.” As the lower court observed, it "could include the theater, town hall, opera house, as well as the public market place, street or any place of assembly, indoors or outdoors.” (Salem Inn v Frank, 364 F Supp 478, 483.)
The overbreadth of that ordinance was obvious; its enforcement could conceivably prohibit the performance of works of unquestionable artistic and social redeeming significance. But Doran v Salem (supra), is not dispositive of this issue for three apparent reasons. First, the relief sought in that case was injunctive, which this court does not have the jurisdiction to entertain. Second, the petitioners sought to enjoin a vague and unconstitutionally overbroad statute, which is not the case here. And third, and most important, the subject involved in Salem was nudity, not obscenity, which we are concerned with in the instant case.
A reading of the Salem cases, both in the lower court and the Supreme Court, fails to indicate any reference by the court to the problem of prior restraint and First Amendment violation. Indeed, it is narrowed to the procedural question of restraining an overbroad statute. Interestingly, the Supreme Court in Salem indicates that properly worded and applied, *380 such a statute could survive constitutional attack by distinguishing their finding from California v LaRue (409 US 109). Although the court did indicate in LaRue that "bar room” type of nude dancing may involve a "minimum” of First Amendment protected expression, such protection was subordinate to the right of the States to regulate the sale of liquor, conferred by the Twenty-First Amendment. It was perfectly proper, said the court, to prohibit nude dancing as part of a State’s liquor license program (distinguished from Salem where the statute involved was unlimited in prohibition).
. We must explore, however, the reference that the court made to the minimum First Amendment protected expression to nude dancing. LaRue, unlike Salem, does deal with this issue. Unquestionably, motion pictures and theatrical productions are within the protection of the First and Fourteenth Amendments. (See Joseph Burstyn, Inc. v Wilson, 343 US 495; Schacht v United States, 398 US 58.) In Schacht (p 63), the court clarified its intent by declaring, "An actor, like everyone else in our country, enjoys a constitutional right to freedom of speech, including the right to openly criticize the Government during a dramatic performance.” The defendants seek to equate the performance of the defendants to freedom of expression. But in LaRue, the court made it clear that the commission of public acts that may themselves violate valid penal statutes gives the State an increasing scope for declaring them to be illegal when such expression consists, in part, of "conduct,” or "action.” (See Hughes v Superior Court, 339 US 460; Giboney v Empire Stor. Co., 336 US 490; United States v O’Brien, 391 US 367.) The court, in LaRue, held (409 US 109, 117-118, supra): " 'We cannot accept the view that an apparently limitless variety of conduct can be labeled "speech” whenever the person engaging in the conduct intends thereby to express an idea.’ ” The court pointed out that it was quite proper to distinguish between bacchanalian revelries in a topless bar and the performance of a scantily clad ballet troupe in a theater. It is not irrational to strike First Amendment protection from the former, and to grant such protection to the latter. The Supreme Court has never extended, directly or impliedly, First Amendment protection to obscenity. On the contrary, despite the different standards set by the Supreme Court for determination of obscenity (see Roth v United States, 354 US 476; Memoirs v Massachusetts, 383 US 413; Miller v California, 413 US 15), it has consistently *381 taken the position that obscenity is not within the area of constitutionally protected speech or press. This applies more forcefully when, as in the instant case before me, nonverbal but physical conduct is involved. Prohibition of such behavior is justified by the State since it furthers an important and substantial governmental interest, and this interest outweighs any remote claim of First Amendment violation. It revolves itself to a question of balance. The alleged acts of the defendants are far removed from the real issue of suppression of expression, and pale in the light of public interest. The original intent of the First Amendment was to protect ideas, controversy, thought and dissent. It insured the right to criticize, differ, and perhaps persuade. It was not intended, as the Supreme Court said in Miller (supra), to be an "anything goes” institutional rationale.
The defendants cite several cases which they say confirm their position that without prior judicial scrutiny the arrest is invalid. (See Marcus v Search Warrant, 367 US 717; Lee Art Theater v Virginia, 392 US 636; People v Avasino, 71 Misc 2d 889; A Quantity of Books v Kansas, 378 US 205; People v Abronovitz, 31 NY2d 160.) All of these cases deal with the seizure of books, printed material, and movies. The issue in these cases was the seizure of physical evidence, not the arrest of the person. In Roaden v Kentucky (413 US 496), where the Sheriff seized a film before a prior judicial determination, the court properly described and defined this as a Fourth Amendment question referring to the admissibility of the seized film at the trial. The rationale in Roaden was that if a search warrant directing seizure of allegedly obscene material may not issue on the mere conclusory allegations of an officer (Marcus v Search Warrant, 367 US 717, 732, supra), then it is self-evident that such a seizure could not be made in the absence of any warrant at all. The issue in Roaden was the denial of the motion to suppress the film, not the arrest of the defendant.
P.B.I.C. v Byrne (313 F Supp 757), as in Salem, also deals with injunctive relief, but is a case more closely akin to the facts and issues presented here. The petitioners were the producers of the live theater production Hair. A few days after the show opened in Boston, the District Attorney of Suffolk County informed the petitioners that they and the performers would be prosecuted under a "lewd and lascivious behavior” statute if certain conduct in the play was not *382 discontinued. The District Court granted the injunction, and in setting down its reasons for such action it can be readily ascertained that said reasons could not apply in the instant case. In arriving at its decision, the First Amendment question was seriously considered by the court (p 766) as to the "chilling effect on the First Amendment rights of the aggrieved parties.” The "chilling effect” test is recurrent through all First Amendment cases. In P.B.I.C., the court reasoned (p 767): "live theatre productions are not insulated from good faith prosecution under a statute which passes constitutional muster. But at the moment the People of Boston and much of New England are being denied the opportunity to judge the merits of 'Hair’ for themselves, not because it may be obscene but because of the promise of prosecution under section 16 and the common-law crime of indecent exposure. All we hold is that those laws authorized greater state interference with the live theater than the First Amendment allows. ” (Emphasis added.)
What the court held, in effect, was that on balance, the chilling effect was of such proportions that it outweighed the application of a constitutionally valid statute. How does that compare with the situation here? The constitutionality of section 235.05 of the Penal Law has repeatedly survived the attack. (See Milky Way Prods., v Leary, 305 F Supp 288; People v Steinberg, 60 Misc 2d 1041; People v Kirkpatrick, 32 NY2d 17, app dsmd 414 US 948.) We would have to stretch our imaginations beyond credible balance to take the position that the chilling effect in depriving the people of the City of New York from viewing the gyrations of a nude dancer in a topless bar is such a prior restraint as to reach First Amendment proportions. Also, it would be equally difficult to say that the performer herself was being deprived of the freedom of expression under the circumstances related herein. If in fact, there is any deprivation of expression, it could not possibly come within the protection and the intent of the First Amendment. The situations between P.B.I.C. and the instant case are not remotely comparable and it would be ludicrous to attempt to compare them.
Moreover, even if prior restraint were to be considered, the mere arrest by the officer is not in any way a judgment of obscenity. This court must assume that a police officer possesses normal sensibilities and prudence which he can exercise in coming to the reasonable belief that an obscene act is *383 occurring in his presence. Under CPL 140.10, this authorizes him to make an arrest. The defendants maintain that the arrest itself is a finding of obscenity, and in effect, the officer is prejudging and substituting his discretion for that of the court. In essence, the defendants claim, to quote an old standard, that every little movement has a meaning of its own. Concededly, the officer’s interpretation of that movement could differ from that of a court at some later stage; but the imputation of obscenity to the movement is not a judicial finding — it is merely the basis for an authorized arrest. At a subsequent proceeding, the court will apply the standards set down by the Supreme Court for determination of obscenity and if the officer was in error the court will so rule. The movements which were the basis of the officer’s arrest were innovative and spontaneous. It was a performance occurring at the moment of the officer’s appraisal. This performance would not necessarily be the same as yesterday’s or tomorrow’s. The situation here differs completely from the constancy of the printed word, the celluloid film, or even the live performance which proceeds pursuant to a predetermined format or script.
This arrest differs in no degree from any other arrest made pursuant to CPL 140.10 and therefore requires no prior judicial scrutiny. In determining the issues of prior restraint and the necessity of prior judicial scrutiny as they apply to First Amendment requirements, common sense must be the ultimate test.
But even if we were to assume that this court was in error as to this finding and that, as the defendants claim, the arrest was invalid, the relief sought by the defendants is still not available to them. It is not, nor has it ever been, a defense to a criminal prosecution that the defendant was illegally or forcibly brought within the jurisdiction of the court. In United States v McNeill(157 F Supp 882) the court acknowledged that an arrest without a warrant for a misdemeanor not committed in the presence of the officer was clearly illegal. However, referring to this illegal arrest it concluded that "the New York courts have consistently held that it does not affect the validity of subsequent proceedings against the person arrested” (p 886). Clearly, physical evidence seized by an officer incidental to an unlawful or illegal arrest is subject to suppression and such suppression is a direct consequence. Dismissal of the accusatory instrument is not.
*384 Motion to dismiss the complaint is denied.