UNITED STATES of America ex rel.
James F. HILL, Jr., Petitioner,

v.

Dr. W. Cecil JOHNSTON, Director, Matteawan State Hospital, Beacon, N. Y.,
Respondent.

No. 70 Civ. 4578.

United States District Court,
S. D. New York.

Jan. 5, 1971.

James F. Hill, Jr., pro se.

Louis J. Lefkowitz, Atty. Gen., by Thomas P. Dorsey, Asst. Atty. Gen., New York City, for respondent.

MANSFIELD, District Judge.

Petitioner, a state prisoner committed as mentally incompetent by state court order to the Matteawan State Hospital, seeks release on habeas corpus [1] so that he may be transferred either to a state hospital for those *civilly* committed or to a *federal* prison. He makes serious charges attacking the legality of his incarceration. Respondent has not answered on the merits since he claims that petitioner has not exhausted his state remedies. Because we agree with the state, petitioner's motions are denied without prejudice to their renewal if the state courts should refuse to grant relief.

Petitioner was indicted in Erie County for robbery in the first degree, grand

---

1. Originally relator asked for $100,000 in damages under 28 U.S.C. § 1343(3) and 42 U.S.C. § 1985. Apparently he has abandoned this claim since he mentions it only once and in all subsequent papers moves for release under 28 U.S.C. § 2241 et seq., The Federal Habeas Corpus Statute. Thus we need not decide his claim for money damages and we treat his motions as habeas petitions. Baker v. McGinnis, 286 F.Supp. 280 (S.D.N.Y. 1968); Martin v. Roach, 280 F.Supp. 480 (S.D.N.Y.1968).

larceny in the third degree, and possession of a dangerous weapon. On April 21, 1970, he was judicially declared to be incompetent to stand trial under § 662–b of the New York Code of Criminal Procedure. Justice Mattina of the Erie County Court committed him to the custody of the Matteawan State Hospital in Beacon, New York, which has been described as "miserable" and "a place more likely to drive men mad than to cure the 'insane'". United States ex rel. von Wolfersdorf v. Johnston, 317 F. Supp. 66, 67 (S.D.N.Y.1970) (Frankel, J.).

Matteawan is a state "hospital" for the criminally insane and other dangerous persons. Petitioner, it should be emphasized, has not been found to be either criminally insane or dangerous. Cf. Baxstrom v. Herold, 383 U.S. 107, 110, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966). Neither has he ever been tried on the charges found in the indictment, since under § 662–b all criminal proceedings were mandatorily suspended after Justice Mattina's order. The indictment, however, is still pending and apparently will be pending indefinitely. Petitioner's motion to dismiss the indictment so that he could be transferred to a civil hospital was denied on July 10, 1970, because the District Attorney's Office had not consented, as required by § 662–b(3).[2]

■ Relator claims that respondent, by keeping petitioner imprisoned at Matteawan, is violating his right to Equal Protection of the Laws, a Speedy Trial, and Due Process of Law, and is subjecting him to Cruel and Unusual Punishment. These charges may well have merit. See United States ex rel. von Wolfersdorf v. Johnston, 317 F. Supp. 66 (S.D.N.Y.1970); cf. Cook v. Ciccone, 312 F.Supp. 822 (W.D.Mo. 1970). But under 28 U.S.C. § 2254(b), (c), petitioner's request for habeas relief is premature.

Petitioner has not yet exhausted his state remedies. On July 24, 1970, he obtained a writ of habeas corpus returnable on August 14, 1970, in the State Supreme Court, Dutchess County. On the return day he requested assignment of counsel and the matter was adjourned. On October 23, 1970, he and his attorney submitted memoranda to the Supreme Court. Relator states to this court that on December 3, 1970, the Supreme Court dismissed his writ and remanded him to the custody of respondents. However, petitioner has not yet appealed the denial of his habeas writ, an essential prerequisite, under the circumstances of this case, to federal habeas corpus relief.

Petitioner raises many of the arguments that were raised in the von Wolfersdorf case by another inmate of Matteawan. In that case the applicant had sought relief in the state court system for 20 years without success.[3] When Judge Frankel finally granted the writ the applicant still had not completely exhausted his state remedies, but he had brought numerous state proceedings and the State Assistant Attorney General merely suggested that "there may be more procedures by which to work more utter exhaustion." (317 F.Supp. at 68 (emphasis in original)). In contrast, the petitioner in this case has not even appealed the denial of his state habeas petition. Though the state courts de-

2. Petitioner would like to be transferred to a civil hospital, preferably one in his home state of Massachusetts. Under New York law a person such as petitioner may not be transferred to a civil hospital unless the indictment is dropped. See New York Mental Hygiene Law, McKinney's Consol.Laws, c. 27, § 70(1) (civil commitment only for people not in confinement on a criminal charge). Petitioner's desire to be transferred to a civil hospital and his problem in implementing this modest desire is the same as that of petitioner in von Wolfersdorf. 317 F. Supp. 66.

3. We do not mean to suggest that petitioner in this case must wander around the state court system for 20 years before we will hear his claim. As we state below, once petitioner has appealed the denial of his state habeas petition to the state courts we will consider him to have exhausted his state remedies.

nied relief to *von Wolfersdorf*, who had much too long a journey to the federal court, we may not now assume that the state courts will ignore the *von Wolfersdorf* decision and refuse to apply federal law. The state briefly asserts that *von Wolfersdorf* has no relevance to this case. That argument has no merit. The two cases are analogous. The "hospital" in both cases is the same Matteawan; the petitioners in both cases do not seek absolute release but only commitment at a civil hospital, rather than at Matteawan, a hospital for the criminally insane.

Although petitioner has only been confined since April of 1970, while the petitioner in *von Wolfersdorf* was imprisoned for 20 years, we question whether the state can imprison him indefinitely without showing the nature and anticipated duration of his alleged mental disability and that there is a reasonable chance that he will be brought to trial. Cf. Cook v. Ciccone, 312 F.Supp. 822, 824 (W.D.Mo.1970). We must remember that he is not confined under a civil commitment statute as dangerous to himself or others, due to his mental illness. Neither is he confined after a conviction. He is imprisoned, apparently without a jury trial, with no release in sight, and although he is presumed innocent of the charges in the state indictment against him—it is these unproved charges that are the proximate cause of his confinement today. There comes a time when the "inherent unfairness and substantial injustice" in such a confinement dictates that relief be granted. Cook v. Ciccone, 312 F.Supp. at 824.

■ Under the circumstances before us, however, it is important to give the New York courts the opportunity to correct federal constitutional defects. The state courts have the same duty as the federal courts to uphold the federal Constitution, and they have repeatedly demonstrated their awareness of this duty, and their willingness and ability to fulfill it. If petitioner's state habeas appeal is decided against him, then we will consider him to have exhausted his state remedies, and he may then apply to this court.

In additional papers petitioner presents two other motions which were not involved in the *von Wolfersdorf* case. In the first of these he moves for an order directing respondent to furnish him with (1) a certified copy of the examination, diagnosis, and findings of the Erie County psychiatric doctors, Michael J. Lynch and Luis M. Suarez; (2) a certified copy of the psychological tests of July 22 and 23, 1970, and the findings of Dr. Ginsberg of Matteawan State Hospital; and (3) a certified copy of any and all psychiatric reports, examinations, results, and findings relating to relator's mental condition by any and all doctors who examined him since May 14, 1970, in Matteawan State Hospital. Without these documents and records it would be difficult for petitioner to contest his confinement on the grounds that he is now competent to stand trial. It would be unconstitutional for the state to confine petitioner on the basis of *ex parte* doctors' reports, cf. Baxstrom v. Herold, 383 U.S. 107, 109, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966) (*ex parte* determination by N.Y. Director of Mental Hygiene that petitioner not suitable for care in a civil hospital and other procedures held to be unconstitutional as a violation of equal protection). Similarly, if he should now be released because the doctors have certified in their reports that he is competent to stand trial, the state could not properly withhold that information and confine petitioner beyond his term. Cf. Baxstrom v. Herold, 383 U.S. at 110, 86 S.Ct. 760.

■ Unfortunately the state has not even bothered to answer this important charge. From petitioner's papers it is clear that he has not brought this claim, which is ancillary to his petition for release, to the attention of the state courts. It may be that the state has not bothered to reply to petitioner because of his failure to exhaust state remedies. However, unless the state agrees to furnish petitioner with copies of the re-

quested documents for the purpose of pursuing his state court remedies he may seek relief here under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3). Accordingly, in denying his petition for habeas corpus for failure to exhaust state remedies we do so without prejudice to his right to bring suit under § 1983 for denial of his right to the records.

Relator's last motion makes serious charges. In an affidavit dated November 16, 1970, he states that he witnessed the murder of a fellow prisoner, one Edison Galarza, on Ward 15 in Matteawan State Hospital on November 12, 1970, at about 5:00 to 5:15 p.m., by three New York State Correctional Officers who beat Mr. Galarza to death while he was in a strait jacket. Because petitioner witnessed this alleged murder he charges that he is in constant danger of his life and that he needs protection. He does not demand complete release, but he does urge that he be placed in federal custody and guarded by federal authorities immediately. He explains that he is a federal prisoner, paroled from Lewisburg Federal Penitentiary on February 10, 1969, and that his federal sentence does not expire until June 3, 1977. On January 16, 1970, a warrant was issued for him because he violated parole. He states that a detainer has been placed against him as of May 14, 1970, and now wants this warrant to be executed immediately because he fears for his life in the state "hospital."

The state also has not bothered to answer this charge. But it is clear from petitioner's papers that he has not brought this matter to the attention of the state courts either. Since his requested remedy is release from the state prison (and then confinement in a civil hospital or in the federal prison) and he denominates his petition as one for habeas corpus, we deny him relief at this time for the reason that he has not exhausted his state procedures.

It is so ordered.