**UNITED STATES** of America ex rel.
Anthony T. **DANIELS**, Petitioner,

v.

**Dr. W. C. JOHNSTON**, Superintendent of
Matteawan State Hospital, Beacon,
New York, Respondent.

**No. 70 Civ. 4918.**

United States District Court,
S. D. New York.

June 7, 1971.

Anthony T. Daniels, pro se.

Louis J. Lefkowitz, Atty. Gen., of New York, for respondent; Louis E. Cooper, Thomas P. Dorsey, Asst. Attys. Gen., of counsel.

WYATT, District Judge.

This is an application for the writ of habeas corpus by Anthony T. Daniels, Jr., acting for himself and without counsel. 28 U.S.C. §§ 2241, 2254. Daniels is being held at Matteawan State Hospital in Beacon, Dutchess County, New York, pursuant to an order of commitment of the Supreme Court of New York (Riccobono, J.) made on October 7, 1969 under the New York Code of Criminal Procedure, Section 662-b. As will be seen, the commitment was because the court was of the opinion that Daniels was in a state of "idiocy, imbecility, or insanity" and in accordance with the cited Section 662-b the commitment was "to the custody of the Commissioner of Mental Hygiene to be placed in an appropriate state institution of the Department of Mental Hygiene or of the Department of Correction as may be designated * * * by agreement between the heads of the two departments * * *". While there is no written evidence thereof, presumably "the heads of the two departments [Mental Hygiene and Correction]" have agreed on the designation of Matteawan as "an appropriate state institution" for Daniels. Daniels was authorized to proceed in this Court in forma pauperis by order of Chief Judge Sugarman filed November 10, 1970, and the petition was filed on that day by the Clerk. 28 U.S.C. § 1915(a)

Relief must be granted to Daniels on this application. The nature of the relief will be hereafter described.

The petition avers that Daniels was arrested on December 27, 1962, in Manhattan; that he was indicted by a Grand Jury for New York County on January 8, 1963 (indictment No. 43/1963) for murder in the first degree and assault in the second degree; that he was found to be insane and on May 3, 1963 ordered committed to Matteawan State Hospital (N.Y.Code Crim.Proc. § 662-b) by Mr. Justice Schweitzer of the Supreme Court for New York County; that he was transferred to Matteawan State Hospital on May 7, 1963; that he was certified sane on April 10, 1969, and transferred to Bellevue Hospital; that he was there found to be insane on October 7, 1969, and on October 20, 1969 was transferred back to Matteawan State Hospital, where he is presently confined.

Daniels claims that he was "falsely arrested"; that he was not at the scene of either crime charged in the indictment; that he was not allowed to appear before the grand jury which indicted him; that he has never "had a hearing on the original Indictment"; that he "has been denied a speedy trial, Due Process of Law, violations of his Civil and Constitutional Rights" (so in the original); that his confinement in Matteawan State Hospital for the last eight years constitutes cruel and unusual punishment; that he has made numerous applications in the state and federal courts, which courts he names, and that he has exhausted his state remedies.

## I.

### PRIOR PROCEEDINGS

It appeared from the papers submitted on this application that extensive proceedings had occurred in connection with Daniels in the Supreme Court for New York and Dutchess Counties. The files from the Dutchess County Supreme Court (Nos. 1966/771 and 1970/293L) were sent here by the Clerk of that Court at my request. The files from the Appellate Division, First Department, and from the Supreme Court for New York County were obtained from the Clerks of those Courts by Assistant Attorney General Dorsey at my request.

A. New York County Supreme Court

A paper entitled "Prisoner's Criminal Record—Police Department City of New York—Bureau of Criminal Identification" indicates that Daniels was arrested in Manhattan on December 27, 1962 on a charge of homicide.

What transpired between December 27, 1962 and January 8, 1963 does not appear; Daniels indicates in some of his state court applications that he was arraigned on December 28, 1962 in "Felony Court" and transferred to the prison on Rikers Island.

On January 8, 1963, an indictment (No. 43/1963) in two counts was filed in the Supreme Court for New York County, in which Daniels was charged with the first degree murder of Estelle Brooks and with second degree assault on Dorothy Eddings; both crimes are charged to have been committed with a knife on December 27, 1962. A bench warrant was issued for Daniels' arrest on January 8, 1963. Daniels apparently appeared in the Supreme Court on that day because the court records for January 8 show that he was committed from the Supreme Court to City Prison (now called the Manhattan House of Detention for Men).

On January 9, 1963, Daniels swore to an affidavit attesting to his poverty and requesting the assignment of counsel.

On January 10, 1963, an order of Mr. Justice Marks was filed assigning Bennett I. Schlessel and George J. Todaro, Esqs., as counsel for Daniels.

On January 30, 1963, an order of Mr. Justice Marks was filed directing Daniels' commitment to Bellevue Hospital for a period of sixty days for a mental examination to determine his sanity.

An order of Mr. Justice Schweitzer, filed April 25, 1963, appears to have granted an application of Daniels' counsel that he be examined by a psychiatrist, the examination to take place the next day, April 26; the order recites that a report had already been made by the Director of Bellevue Hospital stating that Daniels was " * * * in such a state of idiocy, imbecility or insanity that he is incapable of understanding the charge, indictment or proceedings or of making his defense * * * ".

On the same day, April 25, 1963, Mr. Justice Schweitzer filed an order denying a motion made by Daniels himself in writing to dismiss the indictment.

On May 2, 1963, an order was filed by Mr. Justice Schweitzer which confirmed a report of two doctors at Bellevue, not a part of the record, that Daniels was then " * * * in such a state of idiocy, imbecility or insanity so as to be incapable of understanding the proceedings or making his defense * * * " at trial of the indictment. There is also an order of Mr. Justice Schweitzer of the same date which recites:

"On motion of the District Attorney and on consent of counsel, the report of designated psychiatrists finding defendant insane is confirmed and approved.

"ORDERED that the proceedings herein be suspended and defendant committed and forthwith conveyed to the Matteawan State Hospital at Beacon, New York, until no longer insane, and that upon restoration of sanity he be returned to the City Prison, Borough of Manhattan, for resumption of proceedings."

Finally, on May 2, also, Mr. Justice Schweitzer declared "academic" in view of his order of commitment a motion made by Daniels himself for appointment of a "qualified psychiatrist at public expense".

An order of Mr. Justice Schweitzer of May 9, 1963 directed payment of $2,000 to Daniels' two assigned attorneys. An affidavit of counsel annexed to the order states that "the defendant having been committed for psychiatric observation to Bellevue Hospital, thereafter, counsels [so in original] attended a hearing inquiring as to the sanity of the defendant aforesaid * * *." What this hearing was, or when, or before whom, is not stated; it appears to have taken place at Bellevue Hospital.

In August, 1963, Daniels sent a handwritten paper from Matteawan to the Supreme Court for New York County, styled "Motion for a *Show-Cause Order,* to require, the *Grand Jury,* to *re-launch* a *full investigation,* or Inquiry, and *hearing,* on *Suppress facts* * * *" (so in original), in which he claimed perjurious affidavits had been made in his case and that he was innocent. On September 16, 1963, Mr. Justice Geller, treating the application as a motion for a speedy trial and for a writ of habeas corpus, denied the motion with respect to the speedy trial on the ground that Daniels had not been certified as restored to sanity and denied habeas corpus on the ground that the "proper forum" was in Dutchess County.

In 1964 and 1965, Daniels appears to have submitted no papers to the Supreme Court for New York County.

In January, 1966, Daniels submitted an application for a writ of error coram nobis on the ground that his Fifth and Sixth Amendment rights had been violated by police interrogation in the absence of counsel after his arrest; he also asked for a writ of mandamus directing the return of certain personal property allegedly confiscated by personnel at Matteawan. The application was denied by order entered April 15, 1966

on an opinion by Mr. Justice Klein, dated March 4, 1966, which stated that an application for coram nobis was premature; an application for a copy of all records in the case was similarly denied. Daniels then wrote to Mr. Justice Klein stating his desire to appeal, but no appeal was taken.

In April, 1966, Daniels submitted a motion to dismiss the indictment. He claimed that his property had been seized by the police after his arrest in violation of the Fourth Amendment and that he had been denied counsel during police interrogation after his arrest. The motion was denied by Mr. Justice Marks on May 6, 1966, "without prejudice to its renewal when defendant has regained mental competency".

Mr. Justice Marks cited as authority for his decision the decision of the New York Court of Appeals in People v. Booth, 17 N.Y.2d 681, 269 N.Y.S.2d 457, 216 N.E.2d 615 (1966). That decision, cited frequently as authority for denying subsequent applications by Daniels, states only:

"Order affirmed. In our opinion the trial court was correct in denying the writ of error coram nobis until petitioner's sanity is restored [citation omitted].

"All concur except Fuld, J., who dissents in the following memorandum: I do not believe that a defendant's mental condition disables him from seeking coram nobis relief. (Cf. Baxstrom v. Herold, 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620.) I would reverse and remand for a hearing on the merits."

In July, 1966, Daniels submitted further papers seeking "reconsideration", apparently of his motion denied by Mr. Justice Marks on May 6, 1966. His claims are so insufficiently stated that they are impossible to summarize; he claimed violation of the Due Process Clause of the Fourteenth Amendment and of " * * * basically, the Constitution's first eight amendments". He also claimed that he was not guilty and

able to stand trial. Mr. Justice Schweitzer denied the application in an opinion dated August 18, 1966 and an order dated November 23, 1966 on the ground that Daniels' attack on the indictment was precluded by his insanity (citing People v. Booth, above) and that his claim of sanity could only be determined by habeas corpus in Dutchess County. A request for the appointment of counsel included in the papers was not referred to in the opinion of Mr. Justice Schweitzer.

In January, 1967, Daniels submitted a motion to dismiss the indictment apparently on the ground that it was not based on fact. The motion was denied by order of Mr. Justice Aurelio, dated February 2, 1967, on the ground that Daniels needed "further care and treatment" and because "no legal warrant appears for granting any of the relief requested".

In February, 1967, Daniels submitted a motion to dismiss the indictment on the grounds that he had been deprived of counsel at his interrogation by police after his arrest and that there had been "illegal search and seizure * * * to obtain objects and weapons after arrest". The motion was denied, on the authority of People v. Booth, above, by Mr. Justice Schweitzer in an opinion dated March 23, 1967; the order was dated April 7, 1967.

A motion for copies of all papers in Daniels' file, submitted in June, 1967, was denied by Mr. Justice Schweitzer in an opinion dated July 12, 1967; the order was dated July 26, 1967. One ground given for denial of the motion was the decision in People v. Booth, above. A motion for reargument was denied on August 8, 1967 by Mr. Justice Schweitzer.

In August, 1967, Daniels submitted a "Petition for an Order Show Cause" (so in the original), seeking an order directing a speedy trial of his indictment and his discharge from Matteawan. On August 21, 1967, the papers were endorsed by Mr. Justice Sarafite: "Defendant's pro se motion for a writ of error coram nobis is denied."

Less than a week after the "Petition" discussed next above was submitted, Daniels sent another application to the court. It contained a motion for a bill of particulars, a demand for a bill of particulars (but in form directed to a defendant, not to the District Attorney), a motion to dismiss the indictment, a "demurrer to indictment" making various factual defenses, and an affidavit containing numerous allegations of fact about Daniels' whereabouts on the day the crimes are charged to have been committed. In a section of the application styled "Argument", Daniels claimed that he had been denied due process of law, equal protection of the laws, and a speedy trial. Relief was denied by Mr. Justice Schweitzer in an order dated September 7, 1967; the papers are endorsed: "Motion denied without prejudice to a renewal after defendant has been certified sane".

An application submitted in early October, 1967, for the appointment of counsel and for "pre-trial discovery", in which some of the legal and factual arguments already mentioned above were again made, was denied by Mr. Justice Fine on October 17, 1967 on authority of People v. Booth, above.

A motion to dismiss the indictment and a motion for a bill of particulars, making factual and Fifth and Sixth Amendment claims, were denied by order of Mr. Justice Postel dated December 6, 1967.

A similar motion making many of the previous claims was denied by Mr. Justice Brust on August 14, 1968. A motion for reconsideration was denied by Mr. Justice Brust on August 28, 1968.

Daniels submitted in August and September, 1968, requests for a copy of his indictment. Although the District Attorney opposed, citing People v. Booth, the motion was granted by Mr. Justice Schweitzer on September 25, 1968.

A motion for reargument of the application denied by Mr. Justice Brust was

submitted by Daniels in September, 1968. Daniels again raised claims of illegal search and seizure and complained of the denial of his motions on the authority of People v. Booth. The motion was denied by Mr. Justice Schweitzer on October 17, 1968, with a citation to People v. Booth.

Under date of November 25, 1968, Daniels made another application for the dismissal of the indictment, again claiming its invalidity. This application as did many of the previous ones recites his incarceration since arrest on December 27, 1962 and his by then five and a half year confinement in Matteawan. The denial of counsel after arrest and unlawful search and seizure by the police were also claimed. In addition, significantly, Daniels stated:

"Especially when the defendant herein, has been locked up nearly six (6) years, since Dec. 27th 1962, and held in a *Criminal Insane hospital* (Matteawan) since May 7th 1963 for nearly 5½ years, without a lawyer to investigate his case, surroundings circumstances of his case, or of his witnesses (30) thirty, to establish his innocence, beyond a shadow of a doubt.

"By being locked up after arrest, for six years, your honor, I have been *deprived of speedy trial, Due Process of Law*, in violation of *Double Jeopardy*, also *Constitutional* Rights, *Civil* Rights before trial.

"Your honor, it seems to be a crime to become mentally ill in New York State, for a person loses his Civil, Constitutional Rights, placed in Double Jeopardy, deprived of a speedy trial, Due Process of Law, and in the interest of Justice, without delays." (so in the original)

This motion was denied, on the authority of People v. Booth, by Mr. Justice Schweitzer on December 9, 1968.

On November 15, 1968, a notice of appeal by Daniels from Mr. Justice Schweitzer's order of October 17, 1968 was filed. On December 17, 1968, a notice of appeal by Daniels from Mr. Jus-

tice Schweitzer's order of December 9, 1968 was filed.

On February 6, 1969, the Appellate Division, First Department, assigned the Legal Aid Society to represent Daniels on these two appeals.

Daniels' brief in the Appellate Division was furnished to me by the Legal Aid Society. The claim made in the Appellate Division for Daniels was that his "incarceration at Matteawan State Hospital violates his constitutional rights to a speedy trial, to due process of law and to equal protection of the law" (so in the original).

On May 26, 1970, the Appellate Division affirmed without opinion both orders appealed from. 34 A.D.2d 897, 311 N.Y.S.2d 814.

Inquiry by my staff of the Clerk's office of the New York Court of Appeals secured advice that leave to appeal to the Court of Appeals from this order of the Appellate Division was denied by Judge Burke on August 11, 1970.

On April 8, 1969, Mr. Justice Schweitzer made an order which recited that the Superintendent of Matteawan State Hospital had certified that Daniels was "no longer in such a state of idiocy, imbecility or insanity as to be incapable to understand the charge now pending against him * * * or of making his defense thereto * * *" and which directed that Daniels be delivered to the House of Detention for Men in Manhattan for appearance in the Supreme Court. See Code of Cr.Proc. § 662–b.

On May 1, 1969, Daniels pleaded not guilty to the indictment and an appearance was filed by his attorneys, Zapata and Halbert, Esqs., apparently privately retained.

On July 28, 1969, Mr. Justice Dollinger ordered that Daniels be committed to Bellevue Hospital for examination by two qualified psychiatrists to determine his mental capacity to understand court proceedings and to make his defense.

On October 7, 1969, a hearing was held at Bellevue Hospital before Mr.

Justice Riccobono; the transcript of that hearing was submitted to me. Dr. Eugene Allen of the Psychiatric Division of Bellevue testified and was cross examined by counsel for Daniels. His testimony was that Daniels was incompetent to stand trial because of mental illness. Daniels also testified. Mr. Justice Riccobono confirmed the psychiatric report and the same day made an order which recited that Daniels was "in such a state of idiocy, imbecility or incompetency that he is now incapable of understanding the charge or proceedings against him, or of making his defense * * * " and which committed Daniels "to the custody of the Commissioner of Mental Hygiene to be placed in an appropriate state institution of the Department of Mental Hygiene or of the Department of Correction as may be designated for the custody of such person by agreement between the heads of the two departments, there to be safely kept in custody and detained until he becomes capable of understanding the charge, indictment or proceedings against him or of making his defense, and until further order of the court." The order was made pursuant to Section 662–b of the New York Code of Criminal Procedure.

Daniels was apparently shortly thereafter returned to Matteawan.

Under date of December 4, 1969, Daniels, back at Matteawan, wrote to the New York County Supreme Court seeking dismissal of the indictment and the appointment of counsel. The motion was denied by Mr. Justice Carney on February 13, 1970 on the authority of People v. Booth.

Undated motions by Daniels to suppress evidence, to dismiss the indictment and for a bill of particulars were denied on March 2, 1970 by Mr. Justice Carney.

A notice of appeal from the last two orders, those of Mr. Justice Carney, was filed on March 31, 1970. On June 2, 1970, the Appellate Division, First Department, assigned the Legal Aid Society to represent Daniels. The appeal is now pending in the Appellate Division.

On March 13, 1970, the Legal Aid Society, apparently acting for Daniels, served a motion to dismiss the indictment. The motion sought an order under New York Code of Criminal Procedure, Section 662–b(3), which provides for the dismissal of an indictment, on consent of the District Attorney, after the defendant named in it has been continuously confined for over two years because of mental illness or defect. The District Attorney submitted a paper which said only that he opposed the motion "on the ground that the granting of defendant's motion would not be in the best interest of justice". Mr. Justice Schweitzer denied the motion on March 27, 1970 on the ground that a dismissal under the cited section could not be ordered without the consent of the District Attorney.

A motion, submitted in June, 1970, for copies of papers previously submitted was denied by Mr. Justice Culkin on June 30, 1970.

In July, 1970, Daniels submitted a motion to dismiss the indictment. The motion was denied on the authority of People v. Booth by Mr. Justice Baer on July 16, 1970. A notice of appeal was filed on July 28, 1970. On August 13, 1970, the Appellate Division, First Department, appointed the Legal Aid Society to represent Daniels. The appeal is pending.

Later in July, 1970, Daniels submitted a motion to obtain a copy of his indictment. The motion was denied on August 20, 1970 by Mr. Justice Sandifer "without prejudice to renewal when defendant regains his mental competency".

In October, 1970, Daniels submitted an "omnibus" motion seeking various kinds of discovery from the District Attorney or, alternatively, dismissal of the indictment. The motion was denied by Mr. Justice Carney on October 21, 1970 on the authority of People v. Booth.

Finally, there are in the file two motions to dismiss the indictment, dated November 1, 1970 and January 13, 1971, which do not appear to have been acted upon.

B. Dutchess County Supreme Court

Daniels' extensive legal activities have not been limited to New York County.

The first paper in the Dutchess County file is dated July 15, 1966, and is a judgment signed by Mr. Justice Hawkins dismissing a writ of habeas corpus obtained by Daniels on February 10, 1966. The application and any other papers related to it are not in the file.

In the meantime, Daniels had apparently made application, on May 2, 1966, for another writ of habeas corpus, which issued on May 6, 1966. By order of Mr. Justice Hoyt, dated July 13, 1966, an attorney was appointed to represent Daniels. By order of Mr. Justice Hawkins, dated October 18, 1966, Daniels' motion for appointment of a psychiatrist was granted (he had asked for two), and by order dated November 9, 1966 a psychiatrist was appointed by Mr. Justice Hawkins to examine Daniels.

On January 6, 1967, a hearing was held at Matteawan before Mr. Justice Supple. Daniels testified, stating that he was sane, but a doctor from Matteawan testified to his mental incapacity to stand trial. A report of the court appointed psychiatrist, which stated that Daniels was incompetent to stand trial, was read into evidence over objection, but the psychiatrist did not testify. At the conclusion of the hearing, Mr. Justice Supple dismissed the writ and ordered Daniels remanded. A judgment to that effect was signed on January 16, 1967 by Mr. Justice Supple.

Daniels appealed from the judgment to the Appellate Division, Second Department. On October 16, 1967, the Appellate Division reversed on the ground that the report of the court appointed psychiatrist had been improperly admitted into evidence since he did not appear at the hearing. 28 A.D.2d 999, 283 N.Y.S.2d 656. The Appellate Division directed a new hearing.

In the meantime, Daniels had submitted another petition for the writ of habeas corpus, verified June 28, 1967, in which he claimed that he was competent to stand trial. On July 5, 1967, Mr. Justice Supple directed the issuance of a writ returnable on August 11, 1967. On that day, the writ was dismissed by Mr. Justice Hawkins.

Thereafter, further proceedings were held pursuant to the direction of the Appellate Division. On January 11, 1968, Daniels' previous counsel was again assigned by Mr. Justice Supple. On February 20, 1968, Mr. Justice Supple appointed a psychiatrist to examine Daniels and report to the court. A report by the psychiatrist in the file indicates his opinion that Daniels was "very dangerous" and "incompetent". On May 6, 1968, after a hearing on April 19, 1968, Mr. Justice Supple dismissed the writ, stating that "there is no question that the petitioner is not presently capable of making his defense".

A writ of habeas corpus which was issued by order of Mr. Justice Hawkins on July 16, 1968, on Daniels' application verified July 12, 1968, in which he claimed that he was competent to stand trial, was withdrawn at Daniels' request on October 4, 1968.

Under date of December 1, 1968, Daniels wrote to Mr. Justice Supple claiming that he had been deprived of due process of law, civil and constitutional rights, and his right to a speedy trial, and claiming that he was sane. The letter was treated by Mr. Justice Supple as an application for the writ of habeas corpus and was denied by order dated December 4, 1968 for failure to comply with CPLR § 7002(c) which governs the content of a petition for the writ.

Daniels' next application, verified December 9, 1969, was sent from Matteawan to the Supreme Court of New York County and sought an injunction against "legal proceedings for commitment to Matteawan State Hospital". Daniels also submitted a paper claiming that he was falsely imprisoned, inhumanly treated and not incompetent. The application was referred to the Dutchess County Supreme Court by Mr. Justice Streit on January 12, 1970. On January 28, 1970, Mr. Justice Hawkins directed the

issuance of a writ of habeas corpus. On February 6, 1970, Mr. Justice Hawkins assigned counsel to Daniels. On the application of counsel, on March 6, 1970, Mr. Justice Supple appointed a psychiatrist to examine Daniels. The report of the court appointed psychiatrist indicated that Daniels was still in need of treatment, though it was somewhat tentative about his ability to stand trial. On May 8, 1970, after a hearing, Mr. Justice Hawkins dismissed the writ. On May 22, 1970, Daniels' counsel filed a notice of appeal, but there is no indication that the appeal has been prosecuted.

A writ of habeas corpus issued by Mr. Justice Hawkins on an application dated June 15, 1970 by Daniels, in which the return of certain personal effects was sought, was marked withdrawn by Mr. Justice Sweeny on August 28, 1970.

Under date of October 23, 1970, Daniels submitted an application for a writ of habeas corpus, claiming violations of the First, Fifth, Sixth, Eighth and Fourteenth Amendments and demanding trial on the indictment. Mr. Justice Hawkins issued the writ on October 28, 1970. A hearing was held on November 6, 1970, the transcript of which was submitted. Daniels declined the offer of assignment of counsel and testified. A psychiatrist from Matteawan testified that he doubted "very much" that Daniels could understand legal proceedings, that Daniels was sometimes rational and sometimes unreasonable and threatening, and that he needed further treatment (SM 19–21). Mr. Justice Supple stated that he felt that further treatment was required and signed an order dismissing the writ. A judgment dated December 4, 1970 to that effect was signed by Mr. Justice Supple.

C. United States District Court for the Southern District of New York

Daniels has also made several applications to this Court.

63 Civ. 3461

Daniels was authorized to proceed in forma pauperis in this Court by order of Judge McLean filed November 26, 1963 and Daniels' petition for habeas corpus was filed on that day. The petition contained many of the claims already referred to. Judge Weinfeld denied the petition for failure to exhaust state remedies by order filed December 4, 1963. A further paper received by the Court was treated by Judge Weinfeld as a motion for reconsideration and was denied by order filed December 11, 1963. A certificate of probable cause was denied by Judge Weinfeld by order filed May 19, 1964.

In February, 1964, Daniels submitted an application for a writ of mandamus, though against whom and for what reason is somewhat unclear. The application was denied by Judge Dawson by order filed February 27, 1964. Judge Dawson denied reargument by order filed March 4, 1964.

By order filed February 14, 1966, Judge Sugarman denied Daniels' motion for a copy of all papers in his file.

66 Civ. 691

A paper styled "In the Matter and Application for an Court Order of Show Cause, under Change of Venue * * *" was directed to be filed by the Clerk by order of Judge Frankel filed March 10, 1966. The same order provided for the assignment of the Legal Aid Society to represent Daniels. Nothing further seems to have happened in connection with this application, but it has never been decided.

66 Civ. 1006

A petition for the writ of habeas corpus by Daniels was filed on April 8, 1966, by order filed that day of Judge Frankel, to whom the petition had been sent. The petition alleged that Daniels had been held for "an unusual period of time" before trial, in violation of his constitutional rights. Judge Frankel dismissed the petition by order (with brief memorandum) filed November 14, 1966.

70 Civ. 771

Chief Judge Sugarman authorized Daniels to proceed in forma pauperis by order filed February 26, 1970 and his petition was filed on that day. In the petition, Daniels claimed that he was innocent and no longer insane and that he had been subjected to double jeopardy. By order filed April 21, 1970, I dismissed the petition on the grounds that the determination of sanity was the responsibility of the state authorities if due process were afforded and that there was no showing by Daniels that state remedies had been exhausted.

D. United States Court of Appeals for the Second Circuit

Daniels in August, 1967, apparently sought review by the Court of Appeals of the proceedings in 63 Civ. 3461 and 66 Civ. 691. By order filed March 13, 1968, the Court of Appeals denied a certificate of probable cause, leave to proceed in forma pauperis and the assignment of counsel. (MR 1552–3; Kaufman and Hays, C. JJ. and Ryan, D. J.)

## II.

## EXHAUSTION OF STATE REMEDIES

Section 2254(b) of Title 28 of the United States Code requires that a person in state custody must exhaust available remedies in the state courts before he may obtain relief by federal habeas corpus. It is true that Section 2254(b) speaks of a person detained pursuant to a "judgment" of a state court; if the meaning of "judgment" is limited here to judgment of conviction, then the statute would not be applicable because there has been no trial of the indictment in which Daniels is charged. The statute has been cited, however, in denying relief in situations where an applicant had not yet been tried in the state courts; indeed, Judge Weinfeld cited it in denying Daniels' petition for habeas corpus in 1963. See also, for example, Kane v. State of Virginia, 419 F.2d 1369 (4th Cir. 1970); Brown v. Rayfield, 320 F.2d 96 (5th Cir.), cert. denied, 375 U.S. 902, 84 S.Ct. 191, 11 L.Ed.2d 143 (1963); Hillegas v. Sams, 349 F.2d 859 (5th Cir. 1965). Even if the statute were not applicable, however, the doctrine of exhaustion of state remedies would still obtain. Ex parte Royall, 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886); Plummer v. State of Louisiana, 262 F.Supp. 1021 (E.D.La.1967).

■ It is clear that Daniels has exhausted his state remedies in respect to claims that he has been denied a speedy trial, due process of law and equal protection of the laws. Those claims were adequately raised in Daniels' application to dismiss the indictment which was denied on December 9, 1968 by Mr. Justice Schweitzer. The brief of the Legal Aid Society also raised such claims on appeal from that order in the Appellate Division, First Department, and leave to appeal to the Court of Appeals was denied by Judge Burke of that Court.

■ The claim that Daniels has been subjected to cruel and unusual punishment has only been raised in Daniels' Dutchess County habeas corpus applications of December 9, 1969 and October 23, 1970. Review of the dismissals of the writ in connection with these applications has not been had in either the Appellate Division or the Court of Appeals. Accordingly, Daniels has not exhausted his state remedies as to that claim, and this Court may not consider it until Daniels has done so.

Daniels is entitled, however, to consideration by this Court that he has been denied a speedy trial, due process of law and equal protection of the laws. On the two latter claims Daniels is entitled to relief.

## III.

## THE RIGHT TO A SPEEDY TRIAL

■ Daniels' claim here may be stated as follows: that the length of time which has elapsed between the present and the date of his indictment is such that he has been deprived of his right to

a speedy trial. This period of time is about eight and one-half years.

The right to a speedy trial under the Sixth Amendment of the United States Constitution applies, under the Fourteenth Amendment, to state prosecutions. Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). In this Circuit, four factors are considered in determining whether an accused has been deprived of his right to a speedy trial: "(1) the length of the delay; (2) the reason for the delay; (3) the prejudice to the defendant; and (4) waiver by the defendant". United States ex rel. Solomon v. Mancusi, 412 F.2d 88, 90 (2d Cir.), cert. denied, 396 U.S. 936, 90 S.Ct. 269, 24 L.Ed.2d 236 (1969).

Here the delay of eight and one-half years, absent compelling justification, has been clearly far too long. Clearly, also, Daniels has not waived his right to a speedy trial by failing to make a demand for trial; his numerous pro se applications in the Supreme Court for New York County leave no doubt on that score.

■ Daniels has made no showing of prejudice resulting from the delay. Some prejudice may be presumed, however, from the fact that the passage of time will have dimmed the memory of witnesses Daniels might call in his defense. United States ex rel. Solomon v. Mancusi, above cited, 412 F.2d at 91.

■■ The State, however, has ample justification for the delay. To have tried Daniels while incompetent would have violated Daniels' constitutional rights. Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); United States v. Knohl, 379 F.2d 427, 434 (2d Cir.), cert. denied, 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465 (1967). A delay in trial occasioned by mental incompetence of a defendant does not deprive the defendant of his Sixth Amendment right to a speedy trial. United States v. Smalls, 438 F.2d 711 (2d Cir. 1971); United States ex rel. Thomas v. Pate, 351 F.2d 910, 912 (7th Cir. 1965),

cert. denied, 383 U.S. 962, 86 S.Ct. 1232, 16 L.Ed.2d 305 (1966); Germany v. Hudspeth, 209 F.2d 15 (10th Cir.), cert. denied, 347 U.S. 946, 74 S.Ct. 644, 98 L. Ed. 1094 (1954); United States v. Davis, 365 F.2d 251, 255 (6th Cir. 1966); Howard v. United States, 261 F.2d 729 (5th Cir. 1958); Barfield v. Settle, 209 F.Supp. 143 (W.D.Mo.1962).

The four factors enumerated above must, of course, be considered together. United States ex rel. Von Cseh v. Fay, 313 F.2d 620, 623 (2d Cir. 1963). It may be that a period of commitment for incompetency might be so extended that to try a defendant at its conclusion would be constitutionally impermissible. However, in the absence here of a compelling showing of prejudice, a finding cannot be made that the eight and one-half year delay, required by the Constitution, in bringing Daniels to trial has deprived Daniels of his right to a speedy trial. Cf. United States ex rel. von Wolfersdorf v. Johnston, 317 F.Supp. 66, 68 (S.D.N.Y.1970).

### IV.

### DUE PROCESS OF LAW

Daniels' claim here may be stated as follows: that his confinement at Matteawan for the last eight years without trial has deprived him of liberty without due process of law. The Fourteenth Amendment to the Constitution forbids a state to deprive any person of liberty without due process of law.

It is necessary, of course, to isolate the nature of the right to due process of law which is being considered. There are two, "substantive due process of law" and "procedural due process of law".

■ This Court does not believe that Daniels has been deprived of "procedural due process of law". At the proceedings in 1963 and 1969 in the Supreme Court for New York County which resulted in orders directing Daniels' commitment Daniels was represented by counsel. He was examined on both occasions by two psychiatrists and in 1963

by a psychiatrist of his own choosing. The decision to commit Daniels was made by a Justice of the Supreme Court; in 1969 it was clearly made after Daniels had had an opportunity to cross examine the psychiatrist who testified as to his competency and to testify himself; in 1963 Daniels was given a hearing before commitment, though exactly what the proceedings were does not appear.

In addition, Daniels has been permitted to test the validity of his confinement by numerous habeas corpus applications in Dutchess County. He has apparently had counsel assigned to represent him upon demand. He has also been given examinations by a court-appointed psychiatrist whenever he has requested them. He has had hearings before a Justice of the Supreme Court and has been able to testify and to cross examine psychiatrists testifying as to his competency. His continued incompetency has been determined by a judicial officer. Reports of the Mental Health Information Service have been available to the Dutchess County Supreme Court, although such reports are apparently not expressly authorized by statute. See Mental Hygiene Law §§ 88, 85; Correction Law § 408.

The only possible defect in the procedure outlined above is that there is apparently no provision in New York law for an automatic periodic review by a judicial officer of the continued hospitalization of one committed under Section 662-b of the Code of Criminal Procedure. But see Criminal Procedure Law § 730.50 (eff. September 1, 1971). While the absence of such review might prejudice some defendants so committed, Daniels has availed himself of adequate available procedure to require periodic review by a Supreme Court Justice of his mental condition.

Thus, the defect of Section 662-b of the Code of Criminal Procedure is not that it deprives a defendant of "procedural due process of law". The defect is substantive, for it requires the continued confinement (in this case for over eight years) of one who is only *accused* of a crime and *solely* because he is incompetent to stand trial. In Daniels' case, as will be discussed below, this confinement for over eight years has deprived him of liberty without due process of law in the substantive sense.

Any consideration of this aspect of the constitutionality of Section 662-b must begin with the decision in Greenwood v. United States, 350 U.S. 366, 76 S.Ct. 410, 100 L.Ed. 412 (1956). That decision upheld the constitutionality of the federal statutes which provide for the confinement of mentally defective federal prisoners, including those like Daniels who have been accused but not tried. (18 U.S.C. §§ 4241–4248). Briefly, as to a person found to be incompetent to stand trial after he has been examined and a hearing has been held pursuant to Section 4244, Section 4246 provides that he shall be committed to the custody of the Attorney General until he shall become competent to stand trial or the charges against him disposed of. The second sentence of Section 4246 provides, however, that if the conditions specified in Section 4247 are found—that "the prisoner is insane or mentally incompetent, and that if released he will probably endanger the safety of the officers, the property, or other interests of the United States, and that suitable arrangements for the custody and care of the prisoner are not otherwise available", then the commitment shall be governed by Section 4248, which provides that a person committed under Section 4247 shall be held "until the sanity or mental competency of the person shall be restored, or until the mental condition of the person is so improved that if he be released he will not endanger the safety of the officers, the property, or other interests of the United States, or until suitable arrangements have been made for the custody and care of the prisoner by the State of his residence, whichever event shall first occur".

In *Greenwood*, Mr. Justice Frankfurter, writing for a unanimous Court,

stated that certiorari had been granted "[b]ecause of the important issue of federal power raised by the case and because of the conflicting views in the Courts of Appeals, compare Higgins v. United States, 205 F.2d 650 [(9th Cir. 1953)], and Wells v. Attorney General, 201 F.2d 556 [(10th Cir. 1953)], with the decision of the Court of Appeals for the Eighth Circuit in this case * * *" 350 U.S. at 373, 76 S. Ct. at 414. Both *Higgins* and *Wells* had involved commitments of defendants found incompetent to stand trial and committed pursuant to Sections 4244 and 4246. The Tenth Circuit in *Wells* held that a prisoner might be held under those sections only if his insanity were temporary and not permanent, because the power of the federal government over the insane did not extend beyond a temporary commitment; the length of the petitioner's commitment does not appear in *Wells*. *Higgins*, in which the rationale of *Wells* was said to be followed, rejected the claims of a defendant, who had been confined for three years under commitments pursuant to Sections 4244 and 4246, that he had been denied due process of law and that the cited sections were unconstitutional; on remand, however, the district court was directed to determine whether the defendant could go to trial within a "reasonable time" and that, if not, the defendant should be "released from federal restraint, preferably to appropriate state authorities". 205 F.2d at 653.

In *Greenwood*, the district court had committed an accused defendant as provided in the second sentence of Section 4246, making the findings found in Section 4247. The Court of Appeals for the Eighth Circuit, sitting *en banc*, affirmed the order of the District Court, finding the issue to be whether Congress had "the power to provide for the care and custody of a mentally incompetent accused whose incompetency to stand trial is or may be permanent or of indefinite duration". 219 F.2d 376, 386 (1955). The Court held (219 F.2d at 387):

"Insanity which will enable a law violator to escape conviction is not a license to violate the law, nor does it disable the Government from protecting itself and society from an insane and potentially dangerous offender by putting him where he can do no harm, provided the issue of his mental incompetency has been judicially determined.

"The legislation under attack enables the federal district courts to determine, after due notice and hearing, the mental condition of persons in federal custody, charged with federal offenses, who are suspected of being mentally incompetent, and to provide for the care of those who are found to be incompetent to stand trial by committing them to the custody of the Attorney General when that appears to be the only or the best way available for providing for their care and custody.

"We think that (1) the validity of the legislation in suit does not in any way depend upon the probable duration of the mental incompetency of federal prisoners who, in conformity with Section 4244, are found to be mentally incompetent; (2) the legislation was intended to mean exactly what its language imports; and (3) Congress did not, in enacting it, violate the due process clause of the Fifth Amendment or encroach upon the police power of the States reserved to them by the Tenth Amendment."

This was the posture of the inter-Circuit conflict at the time *Greenwood* reached the Supreme Court of the United States.

The Supreme Court affirmed the Eighth Circuit's decision. Mr. Justice Frankfurter noted that "[t]he District Court pursued the appropriate procedure in holding a hearing to determine the existence of the conditions specified in § 4247, once it determined that the accused's mental incompetence seemed more than temporary". 350 U.S. at 374,

76 S.Ct. at 414. Reaching the constitutional issue, Mr. Justice Frankfurter wrote (350 U.S. at 375, 76 S.Ct. at 415):

"The petitioner came legally into the custody of the United States. The power that put him into such custody —the power to prosecute for federal offenses—is not exhausted. Its assertion in the form of the pending indictment persists. The District Court has found that the accused is mentally incompetent to stand trial at the present time and that, if released, he would probably endanger the officers, property, or other interests of the United States—and these findings are adequately supported. In these circumstances the District Court has entered an order retaining and restraining petitioner, while in his present condition, with habeas corpus always available when circumstances warrant. This commitment, and therefore the legislation authorizing commitment in the context of this case, involve an assertion of authority, duly guarded, auxiliary to incontestable national power. As such it is plainly within congressional power under the Necessary and Proper Clause. Art. I, § 8, cl. 18.

"The fact that at present there may be little likelihood of recovery does not defeat federal power to make this initial commitment of the petitioner. We cannot say that federal authority to prosecute has now been irretrievably frustrated."

In closing, the opinion states: "We decide no more than the situation before us presents and equally do not imply an opinion on situations not now before us." 350 U.S. at 376, 76 S.Ct. at 415.

*Greenwood* was later cited as authority for sustaining the commitment under the first sentence of Section 4246 (although the findings under Section 4247 had been made by the district court) of an accused defendant who had already been held for trial under Section 4246 for more than three years. Royal v. United States, 274 F.2d 846 (10th Cir. 1960).

On the issue of pretrial commitment because of mental incompetency there have been various divergent district court opinions involving state and federal prisoners. The closest one to the situation presented here involved the commitment under Section 662–b of the Code of Criminal Procedure of a woman who had been charged with assault in the third degree and found incompetent to stand trial. Although she had been held at Matteawan for eight and one-half years, Judge Levet found her commitment to be in full compliance with the "requirements of due process" and denied her application for the writ of habeas corpus. United States ex rel. Farnum v. McNeill, 157 F.Supp. 882, 888 (S.D.N.Y.1958). Examination of the Clerk's file indicates that although Farnum apparently renewed her application on a number of occasions, it was consistently denied. Civil Action 121–82: June 13, 1958, Edelstein, J.; July 14, 1958, Cashin, J.; February 18 and March 11, 1959, McGohey, J.; April 11, 1963, McLean, J. At the time of the last denial, Farnum had apparently been held at Matteawan without trial for almost fourteen years.

More recently, however, in this and other Districts, there appears to have been a tendency to reach a result contrary to that in *Farnum*. In United States v. Jackson, 306 F.Supp. 4 (N.D. Cal.1969), Judge Zirpoli ordered the release of a defendant indicted for bank robbery who had been held for one year and a half as incompetent to stand trial and whom Judge Zirpoli found to be still incompetent and likely to remain so for the foreseeable future. Judge Zirpoli, finding that the defendant was not being given medical treatment at Springfield and had not been judged guilty of any crime, held that "a person suffering an illness cannot, consistent with the Constitution, be confined as a criminal without medical treatment" and directed the defendant's discharge from

federal custody. 306 F.Supp. at 6. Judge Zirpoli expressed the view that state officials should arrange for the "appropriate civil commitment".

In Cook v. Ciccone, 312 F.Supp. 822 (W.D.Mo.1970), Judge Hunter ordered the return of an inmate at Springfield (in Judge Hunter's District) to the committing court (the Eastern District of California) because of "the inherent unfairness and substantial injustice in keeping an unconvicted person in federal custody to await trial where it is plainly evident his mental condition will not permit trial within a reasonable period of time". 312 F.Supp. at 824. In *Cook*, the petitioner had been held for a year and a half at Springfield under a commitment pursuant to Section 4246; Judge Hunter felt that the court which had sent him to Springfield should consider him for commitment under Sections 4247 and 4248 so that he might be released for state hospitalization.

In United States ex rel. Von Wolfersdorf v. Johnston, above cited, Judge Frankel held that the confinement for twenty years at Matteawan of a man (86 years old at the time of decision) who was incompetent to stand trial violated the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment. It is on the basis of this decision that Daniels makes his claim that he is being subjected to cruel and unusual punishment.

Finally, in United States ex rel. Hill v. Johnston, 321 F.Supp. 818 (S.D.N.Y. 1971), Judge Mansfield denied, solely for failure to exhaust state remedies, a petition for the writ of habeas corpus by an inmate at Matteawan who had been indicted for robbery but found incompetent to stand trial; the petitioner claimed that his confinement for nine months at Matteawan violated his right to equal protection of the laws and due process of law and that it constituted cruel and unusual punishment. Judge Mansfield indicated, however, that the claims made "may well have merit", relying on the decisions in *Von Wolfers-*

*dorf* and *Cook,* above. 321 F.Supp. at 819.

Our Court of Appeals has not had occasion to pass directly on whether prolonged pretrial confinement on the ground of incompetency deprives an accused of due process of law.

There is considerable similarity between 18 U.S.C. §§ 4244 and 4246 and N.Y. Code Crim.Proc. §§ 658 through 662–b. Each, after examination, hearing and finding of incompetency, permits the commitment of an accused until he shall become competent. (It may be noted in passing that 18 U.S.C. § 4246, although similar to Section 662–b, grants the district court discretion on the question of commitment. United States v. Klein, 325 F.2d 283, 285 (2d Cir. 1963). The language of Section 662–b appears to allow no discretion in the court when a finding of incompetency has been made.)

The significant difference between Section 662–b and the federal legislation is that Section 662–b does not provide for any determination that an insane prisoner "if released * * * will probably endanger the safety of the officers, the property, or other interests of the United States" (18 U.S.C. § 4247, see also 18 U.S.C. § 4246 (second sentence)) or for any similar determination. The federal legislation also provides that commitment is for a period until the prisoner has ceased to be incompetent or *has ceased to be dangerous*. Section 662–b, as noted, ignores the factor of danger.

In *Greenwood*, Mr. Justice Frankfurter indicated that the "endanger" determination just described ought to be made if "the mental incompetence seemed more than temporary". 350 U.S. at 374, 76 S.Ct. at 415. Whether this statement was based on constitutional or statutory analysis does not appear from *Greenwood*; it was apparently made in response to an expression in the Eighth Circuit opinion that it "is not entirely clear" when findings under Section 4247

are required for a pretrial commitment. 219 F.2d at 380

More recently, in United States v. Curry, 410 F.2d 1372, 1374 (4th Cir. 1969), the Court, in discussing the same statutes considered in *Greenwood,* held:

" * * * after incompetency has been adjudged under § 4244, we think the trial court should not commit a defendant into custody, pursuant to § 4246, unless and until the court shall also have determined that the defendant *might*, if released, be a public or private danger. The court may, of course, detain him for a reasonable time to observe and otherwise inquire into his propensities, and also to treat him for his illness in the hope of restoring competency."

The Court indicated that, absent such a construction of these sections, "their constitutional validity would be suspect". 410 F.2d at 1374

The constitutional rationale underlying the requirement of such a finding when a longer than temporary commitment is at issue was well expressed by Judge Mansfield in *Hill*, above (321 F. Supp. at 820):

"We must remember that he is not confined under a civil commitment statute as dangerous to himself or others, due to his mental illness. Neither is he confined after a conviction. He is imprisoned, apparently without a jury trial, with no release in sight, and although he is presumed innocent of the charges in the state indictment against him—it is these unproved charges that are the proximate cause of his confinement today. There comes a time when the 'inherent unfairness and substantial injustice' in such a confinement dictates that relief be granted. Cook v. Ciccone, 312 F. Supp. at 824."

The effect of Section 662–b as applied to Daniels and as applied, for example, in *Farnum,* is to permit an endless confinement of a person, accused but not convicted, *solely* because he is incompetent to stand trial. There has been no finding that he is dangerous and that either for his own benefit or for safety of the community he should be committed to await trial; the only finding made or required to be made under Section 662–b is that Daniels is incompetent to stand trial. No finding seems ever to have been made by the Dutchess County Supreme Court on the habeas corpus applications of Daniels except that he is incompetent.

While it may be that a *temporary* commitment under Section 662–b solely on the ground of incompetency is constitutionally permissible, the commitment of applicant Daniels has been anything but temporary. The necessary conclusion, as Judge Frankel held in *Von Wolfersdorf* and as the decisions in *Greenwood, Curry* and *Hill* make clear, is that Daniels' confinement for over eight years solely because he is incompetent to stand trial on the indictment in which he is named has deprived him of liberty without due process of law, in violation of the Fourteenth Amendment of the Constitution.

It should be noted that a case, very similar to that at bar, is now before the Supreme Court. In Indiana, a defendant awaiting trial was confined as a mental defective under an Indiana statute, similar to Section 662–b, which provided for such commitment without any finding that the defendant was a danger to himself or to the community. The Supreme Court of Indiana upheld the statute as constitutional. Jackson v. Indiana, 255 N.E.2d 515 (1970). As the dissenting judge pointed out (255 N.E. 2d at 519):

"What then is the purpose of the confinement of this appellant whose condition is permanent. Punitive? Protection of society? Protection of the appellant? Confinement to serve any of these purposes based merely on a trial court finding that appellant 'has not comprehension to understand the proceedings and make his defense' in my opinion would violate the due process clause of the 14th Amendment to the United States Constitution. Appellant has not been convicted of

any crime, nor found to be dangerous to the community or himself. It has not been shown that he cannot continue to live in our society as he has for twenty-seven years. What conceivable basis is there for committing this appellant to a psychiatric institution for, what is in effect, life?

"Clearly, the real basis for this commitment is the existence of the criminal charges against appellant. This is shown by the fact that if those charges were to be dismissed because another person confessed and plead guilty to those crimes or the complainant admitted he had lied in making the charges, the commitment of appellant under Burns § 9–1706a, *supra*, would obviously be ended. Thus, the existence of *unproved criminal charges* operates to keep appellant confined in a state institution for life. This is a blatant violation of the due process clause of the 14th Amendment to the United States Constitution. For a case interpreting the federal statutes on this point see United States v. Curry (4 Cir. 1969), 410 F. 2d 1372."

The Supreme Court of the United States, on March 22, 1971, granted certiorari. 401 U.S. 973, 91 S.Ct. 1203, 28 L.Ed.2d 322.

## V.

## EQUAL PROTECTION OF THE LAWS

■ Daniels' equal protection claim may be stated as follows: that his confinement at Matteawan, now in its ninth year, under Section 662–b of the Code of Criminal Procedure and without the safeguards provided for those civilly committed under the Mental Hygiene Law, violates the Equal Protection Clause of the Fourteenth Amendment.

Because Daniels was a defendant in a criminal proceeding, he was examined and committed in accordance with the procedures contained in the Code of Criminal Procedure, more specifically Sections 658 through 662–b thereof. This procedure is final after a hearing before the Court and a determination by the Court that the defendant "is in such state of idiocy, imbecility or insanity as to be incapable of understanding the charge against him or the proceedings or of making his defense". The place of confinement of Daniels was apparently agreed to by the heads of the departments of correction and mental hygiene.

In contrast, civil commitment of the "mentally ill" is governed by the Mental Hygiene Law (MHL). A person is "mentally ill" if "afflicted with mental disease to such an extent that for his own welfare or the welfare of others, or of the community, he requires care and treatment" (MHL § 2(8)). There is provision for jury trial (MHL § 74) and there may be an appeal (Warner v. State, 297 N.Y. 395, 79 N.E.2d 459 (1948)).

The first period of civil commitment by the court is for not more than six months. If further retention is believed by the hospital director to be necessary, the court may make a further order of commitment (or retention) for not more than one year and thereafter for periods of not more than two years (MHL § 73(3)). The same procedures (jury trial, etc.) are available at the end of each of the periods indicated (MHL §§ 73, 74).

Normally, a person found to be mentally ill in the civil proceedings described is confined in a state hospital for the mentally ill, under the jurisdiction of the Department of Mental Hygiene (MHL §§ 2(4–a), 70, 73).

Matteawan State Hospital, where Daniels is held, is under the jurisdiction of the Department of Correction (Correction Law § 400). The cited statute provides that such a hospital shall receive (among others) those (like Daniels) committed by "a court of criminal jurisdiction" and those committed under section 85 of the Mental Hygiene Law.

Section 85 of the Mental Hygiene Law provides for the confinement in Matteawan State Hospital of a person who "is

so dangerously mentally ill that his presence in [a state] hospital is dangerous to the safety of other patients therein, the officers or employees thereof, or to the community". The determination is made by the court after hearing (if demanded). The period of commitment by the court to Matteawan and the extended periods are of the same length as the commitments to a state hospital. The procedures for extensions of commitment to Matteawan are the same as for the first commitment there.

It has thus been seen that there are a number of differences between the commitment procedures under which Daniels has been held (because named in an indictment) and the commitment procedures required for a person not named in an indictment.

The standards are different. Daniels is held because he cannot understand the charge against him or make his defense. He may very well be dangerous or require care and treatment but no such finding has ever been made and such a finding would be essential to hold him were it not for the criminal charge.

If it were not for the criminal charge and there were a finding that Daniels had a mental disease and for his own welfare, etc. required care and treatment, he would be confined in a state hospital for the mentally ill under the Department of Mental Hygiene.

If it were not for the criminal charge, Daniels could not be held at Matteawan except after a finding (beyond that just indicated) that he is "dangerously mentally ill", etc.

If it were not for the criminal charge, Daniels would have a right to a jury trial, to appeals, and to review of his condition at the indicated periods. (Habeas corpus has secured to Daniels the same benefits as appeals but, of course, the standards applied have been significantly different from those applied to members of the community not charged with crime.)

It seems clear that Daniels has been denied the equal protection of the laws.

Baxstrom v. Herold, 383 U.S. 107, 86 S. Ct. 760, 15 L.Ed.2d 620 (1966); United States ex rel. Schuster v. Herold, 410 F. 2d 1071 (2d Cir.), cert. denied, 396 U.S. 847, 90 S.Ct. 81, 24 L.Ed.2d 96 (1969).

*Baxstrom* involved a prisoner in New York whose sentence was about to expire and who was being held at Dannemora State Hospital, used by the New York Department of Correction to confine male prisoners found to be mentally ill while serving sentences. The authorities at Dannemora asked that Baxstrom be "civilly committed" at the completion of his sentence under a section of the Correction Law so providing. The Supreme Court found that the differing procedures for commitment of prisoners and non-prisoners was a violation of the right to equal protection. The Court said (383 U.S. at 110, 86 S.Ct. at 762):

"We hold that petitioner was denied equal protection of the laws by the statutory procedure under which a person may be civilly committed at the expiration of his penal sentence without the jury review available to all other persons civilly committed in New York. Petitioner was further denied equal protection of the laws by his civil commitment to an institution maintained by the Department of Correction beyond the expiration of his prison term without a judicial determination that he is dangerously mentally ill such as that afforded to all so committed except those, like Baxstrom, nearing the expiration of a penal sentence."

In *Schuster*, our Court of Appeals found that the transfer of a prisoner (serving a sentence) from his prison to a hospital for the criminally insane (again Dannemora State Hospital) violated the Equal Protection Clause of the Fourteenth Amendment.

Judge Kaufman noted the procedural rights which are enjoyed by persons who are civilly committed under the Mental Hygiene Law (410 F.2d at 1083):

"* * * in addition to the two-physician certification, and provisions for

appropriate notice, hearing and court action, New York also requires for persons being committed involuntarily, review of the need for further confinement 60 days after commitment, another review after one year, followed by periodic reviews every two years thereafter. These regular periodic reviews require in each instance a judicial determination of the need for further institutionalization. Mental Hygiene Law § 73. Moreover, when any of these determinations is adverse to the civil patient, he may obtain *de novo* review on the issue of sanity by a jury. Mental Hygiene Law § 74."

He had earlier formulated the applicable principle as follows (410 F.2d at 1081):

"Baxstrom v. Herold [above] * * * sparked an awareness that we cannot tolerate two classes of insane persons—criminal and non-criminal,—when we are asked to examine commitment procedures available to both."

For recent indications in the state courts of an awareness of the problems indicated, see Erwin v. Johnston, 6 CrL 2309 (N.Y.Sup.Ct., Dutchess County, December 19, 1969), as discussed in People v. McCloud, 62 Misc.2d 1086, 1092, 310 N.Y.S.2d 772, 778 (Monroe County Ct. 1970).

It may be that commitment for a temporary period of an insane person accused of a crime would not offend the Equal Protection Clause, even if the commitment were not attended by all the safeguards involved in a normal civil commitment. As has been shown, no temporary commitment is here involved; Daniels' commitment has been for over eight years and may well last for life.

Accordingly, it is held that Daniels has been deprived of the Equal Protection of the Laws, in violation of the Fourteenth Amendment, in that he has been committed without the safeguards available to others civilly committed and in that no justification appears for such a difference in treatment; Daniels has

not been convicted of anything and is presumed to be innocent of the charges in the indictment.

## VI.
## REMEDY

This Court has wide discretion to fashion appropriate forms of relief, including but not limited to outright release from custody. 28 U.S.C. § 2243; Peyton v. Rowe, 391 U.S. 54, 66–67, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968).

Release from custody is not indicated on the facts presently known. Daniels may be dangerous or, if not, he may require care and treatment for his own welfare or that of the community.

The respondent is directed to initiate proceedings promptly for the civil commitment of Daniels under the Mental Hygiene Law and to see that those proceedings are completed with reasonable speed.

If there is a determination that Daniels is "dangerously mentally ill" or other determination as provided in Section 85 of the Mental Hygiene Law, Daniels may be retained at Matteawan subject to all provisions of the Mental Hygiene Law.

If there is no such determination but if there is a determination under Mental Hygiene Law §§ 73, 74 that Daniels is "mentally ill" as defined in Mental Hygiene Law § 2(8), Daniels must be transferred from Matteawan to a state hospital for the mentally ill under the jurisdiction of the Department of Mental Hygiene.

If it be determined that Daniels is not "mentally ill", respondent is to deliver Daniels to the custody of the Commissioner of Correction of the City of New York, with notice to the District Attorney of New York County, for arraignment for bail on the pending indictment in the Supreme Court for that County.

The respondent is directed to report by affidavit by the close of business on August 20, 1971, the progress of the proceedings herein directed.

So ordered.